# BANK OF COMMERCE *v.* TENNESSEE FOR THE USE OF MEMPHIS.

# BANK OF COMMERCE *v.* TENNESSEE AND COUNTY OF SHELBY.

ERROR TO THE SUPREME COURT OF THE STATE OF TENNESSEE.

Nos. 668, 669.  Argued[1] January 20, 21, 22, 1896. — Decided March 2, 1896.

The provision in the charter of the plaintiff in error that " said institution shall have a lien on the stock for debts due it by the stockholders before and in preference to other creditors, except the State for taxes, and shall pay to the State an annual tax of one half of one per cent on each share of capital stock, which shall be in lieu of all other taxes," limits the amount of tax on each share of stock in the hands of the shareholders, and any subsequent revenue law of the State which imposes an additional tax on such shares in the hands of shareholders impairs the obligation of the contract, and is void. *Farrington* v. *Tennessee,* 95 U. S., 679, affirmed to this point.

The decision by the Supreme Court of the State that this exemption applies to new stock in the bank, created and issued since the adoption of the constitution of 1870, being in favor of the exemption claimed by the bank, cannot be reviewed by this court.

When not otherwise exempted, the capital stock of a corporation and its shares in the hands of shareholders, may both be taxed; and if so taxed it is not double taxation.

The surplus accumulated by the plaintiff in error is not exempted from taxation by the said provision of exemption in its charter.

THESE were writs of error to the Supreme Court of the State of Tennessee, sued out by the plaintiffs in error for the purpose of reviewing the judgment of the state court in favor of the State in each case. They were both of them suits in equity brought by the State for the use of the city of Memphis in the one case, and by the State and the county of Shelby in the other, for the purpose of recovering the amounts of certain taxes alleged to be due the city of Memphis and the

---

[1] This case was argued with Nos. 766, 676, 677, 269, 674, 675, 678, 679, 672, and 673, reported *infra.*

county of Shelby for various years, commencing in 1887. The suits were substantially alike and involved the same questions, and the decision of the one will be the decision of the other. In the further discussion it will only be necessary to refer to the first case.

The bill, after it was amended, set forth the material facts necessary to raise the questions herein involved. It alleged the incorporation of the bank in 1856, and in its charter was contained the following provision : " Said institution shall have a lien on the stock for debts due it by the stockholders before and in preference to other creditors, except the State for taxes; and shall pay to the State an annual tax of one half of one per cent on each share of capital stock, which shall be in lieu of all other taxes." It alleged that notwithstanding the above provision there had been assessed upon the stock certain amounts, alleged to be due for taxes, for the years 1887 to 1890, inclusive, by virtue of chapter 2 of the general tax laws of the State for the year 1887, and chapter 104 of the laws of 1889, and in the amended supplemental bill an additional sum was claimed for the taxes from 1891 to 1894, inclusive, under the above mentioned acts. The bill also made claim to recover the *ad valorem* taxes on the surplus and undivided profits of the plaintiff in error bank for the years 1892, 1893, and 1894, under the proviso contained in section 3 of chapter 26 of the Extra Session Acts of 1891, the proviso reading : "*Provided,* That the surplus and undivided profits in such bank, banking association or other corporation shall be assessable to said bank or other corporation, and the same shall not be considered in the assessment of the stock therein." All the material allegations necessary to show a valid and legal assessment upon the stock were set forth in the bill, unless the provision in the charter of the bank above alluded to prevents the assessment of such stock or shares of stock in the hands of shareholders in any other way or for any other sum than that stated in the charter. The bill also alleged that complainant was advised that the capital stock in a corporation and shares of stock in the hands of shareholders were separate and distinct subjects of taxation, and that in the

absence of any exemption clause it was within the power of the State, without subjecting such legislation to the objection of double taxation, to have taxed both the capital stock of the corporation and the shares of stock in the hands of the stockholders; that the charter tax, bonus, or whatever else it may be called, of one half of one per cent to be paid to the State was a tax upon the shares of stock, and that the language " in lieu of all other taxes " meant in lieu of all other taxes on the shares of stock, and that it had no effect to exempt the capital stock of the corporation from taxation. The question of law whether the capital stock was subject to *ad valorem* taxes or the shares of stock in the hands of the shareholders was submitted to the court for determination. The bill also set forth that after the adoption of the constitution of Tennessee of 1870 (on the 4th day of May in that year) the capital of the bank had been increased from either $60,000, or from $200,000, to $1,000,000, and the plaintiffs alleged that the new stock, whatever might be the amount thereof, aside from all other questions, was taxable.

To the original bill a demurrer was filed upon the ground that the general tax laws, under which the taxes against the bank or its shareholders were assessed and sought to be collected, were violative of the contract provision of the Constitution of the United States. The demurrer was overruled with leave to the defendants to rely on it in their answer. Thereupon a stipulation was made, in each case fixing the basis of the reassessments for the years 1891 to 1894, inclusive, waiving the necessity for the discovery of the shareholders in the bank upon the bank's agreeing " that for the purposes of this case the shares of stock in the name of J. A. Omberg shall be taken as validly and legally assessed for the years aforesaid." It was further stipulated " that any liability that might be adjudged against Mr. Omberg as a shareholder in such corporation should be treated as establishing a like liability of all the shareholders therein, and that for such liability of all the shareholders as thus established a decree should be entered against the corporation, the said corporation consenting that complainants have a decree against it for

any liability for taxes that may be herein established against the shareholders." The stipulation between the parties was that the defendant J. A. Omberg should, for the purpose of testing the liability of the shareholders for taxes, be considered and treated as a representative of all the shareholders, and that a liability decreed against him for taxes due as a shareholder should be considered as the liability of all the shareholders duly established, and that a decree in favor of complainants should be entered against the bank and against its unknown shareholders.

The case thereupon was heard upon the amended and supplemental bills, the stipulations above spoken of, which were filed, and the demurrer of the defendants which raised the question that the tax laws under which these taxes were sought to be collected against it and its shareholders were void, because in conflict with section 10 of Article I of the Constitution of the United States. The chancellor, before whom the case was tried, was of opinion that the demurrer was well taken, and accordingly dismissed the bill of complaint. The Supreme Court of the State of Tennessee reversed this decree of dismissal and held, first, that the owners of shares of stock in the Bank of Commerce were thus liable for *ad valorem* taxes to the city of Memphis; and, second, that the bank was liable for *ad valorem* taxes to the city for the years 1892 to 1894, inclusive, on its surplus and undivided profits. Judgment was entered accordingly, and the plaintiffs in error, the Bank of Commerce and J. A. Omberg, have sued out this writ of error to obtain a review of the judgment by this court.

The errors assigned were:

(1) That the Supreme Court of Tennessee erred in adjudging a liability of the shareholders in the Bank of Commerce to pay to the State of Tennessee, or to the county of Shelby or to the city of Memphis *ad valorem* taxes on their shares of stock for the years specified, because, as is alleged, the shareholders are thereby deprived of the immunity from taxes guaranteed to them by the contract contained in the charter of the Bank of Commerce, and that the general tax laws af-

firmed to be valid against them are repugnant to the Constitution of the United States.

(2) For the like ground error is assigned to so much of the decree as denies to the plaintiff in error, the Bank of Commerce, an exemption from taxation on its surplus and undivided profits, notwithstanding its exemption therefrom under its charter provision.

*Mr. William H. Carroll* and *Mr. R. J. Morgan*, (with whom were *Mr. T. B. Turley* and *Mr. L. B. McFarland* on the brief,) for the Bank of Commerce and Omberg. In support of the second assignment of error they cited: *State v. Union Bank*, 9 Yerg. 119; *DeSoto Bank v. Memphis*, 6 Bax. 415; *Memphis v. Hernando Ins. Co.*, 6 Bax. 527; *Pollock v. Farmers' Loan & Trust Co.*, 157 U. S. 429; *Bank of Commerce v. McGowan*, 6 Lea, 703; *Bank v. Tennessee*, 104 U. S. 493; *Tennessee v. Whitworth*, 117 U. S. 129; *New Haven v. Bank*, 31 Conn. 106; *Postal Telegraph Co. v. Adams*, 155 U. S. 688.

*Mr. S. P. Walker*, (with whom were *Mr. C. W. Metcalf* and *Mr. F. T. Edmondson* on the brief,) for the State of Tennessee.

I. Defendants in error insist that if the decision in *Farrington v. The State*, 95 U. S. 679, is to be considered as controlling, the charter tax in question is laid upon the shares of stock, and the exemption is of the shares alone; that the capital stock and franchises of the defendant bank are taxable, under the rulings of that case.

II. The language of this charter, however, essentially differs from that of the Union and Planters' Bank; and the conclusions to be reached in the two cases must also differ.

By the proper construction of the charter of this bank, the commuted charter tax is to be paid by the bank upon its capital stock, the exemption is of the capital stock, and the shares of stock are taxable.

The language of the exemption clause, to the effect that "said institution shall have a lien on the stock for debts due it by the stockholders before and in preference to other cred-

itors, *except the State for taxes,* and shall pay to the State an annual tax of one half of one per cent on each share of capital stock, which shall be in lieu of all other taxes," clearly intends that the preferential right of the State for taxes refers to such general annual taxes as might be laid on the shares, and affirmatively demonstrates a reservation of power to tax the shares, rather than a surrender thereof.

The commuted charter tax is to be paid by the corporation on the capital stock, and the exemption is of that subject of taxation alone. *Farrington* v. *Tennessee,* 95 U. S. 679; *Memphis* v. *Farrington,* 8 Bax. 539; *Tennessee* v. *Whitworth,* 117 U. S. 129; *Delaware Railroad Tax,* 18 Wall. 206; *Vicksburg &c. Railroad* v. *Dennis,* 116 U. S. 665.

III. However the general question of charter exemption may be determined, the capital stock paid in, or the shares of stock of the defendant bank, subscribed and issued since the adoption of the state constitution on the 5th of May, 1870, is or are taxable. *Railroad Co.* v. *Heckt,* 95 U. S. 168; *Ex parte N. E. & S. W. Railroad,* 37 Ala. 679; *Howard* v. *Kentucky Ins. Co.,* 13 B. Mon. 282; *Bank of Columbia* v. *Okley,* 4 Wheat. 235; *Aspinwall* v. *Daviess County,* 22 How. 364; *Memphis &c. Railroad* v. *Commissioners,* 112 U. S. 609; *Railway Co.* v. *Allerton,* 18 Wall. 233; *State* v. *Bull,* 16 Conn. 179; *Dartmouth College* v. *Woodward,* 4 Wheat. 688; *Frost* v. *Frostburg Coal Co.,* 24 How. 278; *Trask* v. *Maguire,* 18 Wall. 391; *Memphis* v. *Memphis City Bank,* 7 Pickle, 574.

IV. The surplus is in any event taxable.

MR. JUSTICE PECKHAM, after stating the case as above reported, delivered the opinion of the court.

The claim of the State seems to have been in the alternative, that either the corporation was liable for the taxes assessed under the general laws above referred to, or else that the shareholders were, and the bill was framed with the idea of obtaining a final decision in regard to which of the two parties was liable without making it necessary to commence two actions for that purpose. The defendants,

the bank and shareholders, claimed entire exemption from all taxes upon either the corporation or the shareholders, other than the taxes imposed in the charter. In support of its claim that the correct construction of the charter clause, as now presented, is that the charter tax was laid on the capital stock, and that it was exempted from further taxation, and that the shares of stock were subject to general taxation, counsel for the State refer to the decision in the case of *Farrington* v. *State of Tennessee*, 95 U. S. 679. In that report, at page 681, Mr. Justice Swayne quotes the exemption clause of the charter in question as taken from the record in that case as follows: " That the said company shall pay to the State an annual tax of one half of one per cent on each share of the capital stock subscribed, which shall be in lieu of all other taxes." A full and correct quotation of the clause (which is in reality the same in both cases) has already been given, but it may be repeated here. It is as follows: " Said institution shall have a lien on the stock for debts due it by the stockholders before and in preference to other creditors, except the State for taxes; and shall pay to the State an annual tax of one half of one per cent on each share of capital stock, which shall be in lieu of all other taxes." The record from which Mr. Justice Swayne made his quotation omitted the prior portion of the clause just set forth, and counsel for the State herein claim that the decision in the *Farrington case*, by this court, which held " that the exemption was a contract between the State and the bank limiting the amount of tax on each share of stock, and that a subsequent revenue law of the State which imposed additional taxes on the shares in the hands of the shareholders impaired the obligation of the contract and was void," was not decisive of this case. The difference between the provision as quoted by Mr. Justice Swayne and the actual provision is, as counsel claim, material, and must lead to different results, because the first quotation was misleading, and the record did not state the whole clause. It was upon this assumed difference that the Supreme Court of Tennessee, in this case, came to the conclusion it did, and held that the

charter tax was on the capital stock, and the exemption from further taxation was·an exemption of that stock, and that the shares of stock were, in the hands of the shareholders, subject to general taxation. As this court in the *Farrington case* has held that the charter tax was laid *on the shares of stock,* and that the ·same were *not subject to other or further taxation,* the Tennessee court acknowledged the controlling· force of that decision upon the case then before it, provided the question was the same or in substance the same as was considered and decided in the *Farrington case.* The state court then proceeded to point out in its opinion what it considered to be the material difference between the two provi-·, sions, and it held that the provision which gives a lien on the stock for debts due the bank by the stockholders before· and in preference to other creditors, except the State for taxes, materially changes the meaning from that contained in the exemption clause quoted in the *Farrington case,* and that the language, as now quoted, naturally implied that the tax referred to in the charter was upon the capital stock, and that the lien reserved by the State for taxes does not refer to the annual charter tax, for the reason that the charter..tax was to be paid by the corporation, but that it referred to such other or general tax·as might be levied by the State upon the , shares, thus showing that the intention of the State was to reserve to itself the right to tax the shares in the hands of the shareholders, and to exempt the stock as.the property of the corporation. It was also said that it was neither natural nor reasonable to assume that the State reserved a lien on the shares which· were the property of the· shareholders to pay a·tax that the corporation was required to pay. In other words, it could not be supposed that the State required one person to pay a tax and reserved a lien upon the property of another to secure its payment, and that if the lien of the State was reserved for securing the payment of the charter ·tax the State was placed ·in the attitude of having voluntarily. postponed itself to every other creditor of the corporation because all creditors must be paid before the shareholder gets anything. These reasons which commended

themselves to the Supreme Court of Tennessee were sufficient
in the judgment of that tribunal to show a difference in the
meaning of the two clauses, and it therefore came to the con-
clusion it did notwithstanding the decision of this court in the
*Farrington case,* and the shareholders were held liable to pay
the tax claimed by the state authorities.

On the other hand, it is said that the difference in the lan-
guage used in the two quotations is wholly immaterial in any
event, and that whatever portion of the clause may have been
omitted in the record in the *Farrington case,* the whole char-
ter of the bank was before the court for its examination, and
it cannot be supposed that in a case of such importance,
argued by such eminent counsel as those who appeared in
that case, there was anything overlooked or omitted. The
claim is therefore made that the court must have regarded
the portion of the clause omitted in the record as immaterial.

We do not think under the circumstances that we ought
now to come to a different conclusion upon the question of
exemption from that which was arrived at by this court in
the *Farrington case.* As the whole charter was then before
the court, we are not prepared to say that its force was mis-
understood, or that there was an omission by the court to
consider all the language of the exemption clause simply
because a portion of it is omitted in the quotation from the
record made in the opinion therein delivered. We are not
inclined, therefore, to overrule or distinguish the *Farrington
case,* and we must now hold that the charter clause of exemp-
tion limits the amount of tax on each share of stock in the
hands of the shareholder, and that any subsequent revenue
law of the State which imposes an additional tax on such
shares in the hands of shareholders impairs the obligation of
the contract and is void. This compels us to reverse the judg-
ments herein against the shareholders.

Counsel for plaintiffs in error also urged in the course of
their argument before us that the *Farrington case* not only
decided that the shareholders were exempt from any further
taxation by reason of this clause in the charter, but that the
corporation was also thereby exempted, so that the only tax

that could be collected from either the corporation, the shareholders, or both, was the one half of one per cent mentioned in the charter.

Within this general claim of exemption is embraced the right to tax the stock in this bank issued since the adoption of the present constitution of Tennessee, in 1870. The charter (which was granted long before the adoption of that constitution) provides, section 2, that the capital stock of said company shall be divided into shares of $50 each, and when 200 shares shall have been subscribed, and the sum of $1 per share paid thereon, the shareholders may meet and elect five directors. Section 4 provides that the bank "may receive on deposit any and all sums not less than one dollar per week offered as stock deposits, . . . and when such deposits shall amount to fifty dollars they may, at the option of the depositor, become stock in the institution." The parties to this suit agreed by stipulation that on the 5th day of May, 1870 (the day the constitution was adopted,) the capital stock of the bank was $200,000, and that on March 17, 1887, and on sundry days prior to June 1, 1887, it was regularly increased to $600,000, and that on the 17th day of March, 1890, and on sundry days prior to June 1, 1890, it was again regularly increased to $1,000,000. The Supreme Court allowed the claim of exemption and held that the stock issued since the adoption of the new constitution stood in all respects as to taxation the same as the stock earlier issued, notwithstanding the provision of the constitution for the taxation of all property, and that, therefore, the bank was not liable to the tax claimed by the state authorities. The validity of the claim made by the bank for exemption of the new as well as of the old stock was therefore admitted by the state court as a right protected by the Federal constitution.

The plaintiffs in error claim that as to this portion of the decision of the Supreme Court of Tennessee it cannot be reviewed by this court, because it was in favor of the bank. The bank by its answer to the bill drew in question the validity of the acts of the assessing officer of the State acting under the authority of the general statutes of Tennessee, pro-

viding for the assessment of its property, on the ground that the authority exercised by the assessing officer under the Tennessee statutes impaired the obligation of the contract entered into between the State and the bank in its charter, and the decision of the Supreme Court of Tennessee was against the validity of the authority so exercised under those general revenue laws.

The state court decided in favor of the exemption claimed by the bank by virtue of its contract with the State. The protection of the constitutional provision was thus accorded it.

We are of the opinion that this court cannot in this case review that decision.

Section 709, Revised Statutes of the United States, gives jurisdiction to this court, among other things, upon writ of error to review the final judgment or decree in any suit in the highest court of the State in which a decision in the suit could be had, where is drawn in question the validity of a statute of, or authority exercised under, any State, on the ground of their being repugnant to the Constitution, treaties or laws of the United States, and the decision of the state court is in favor of their validity. Here the decision of the state court is against the validity of the acts of the assessing officer acting under the authority of the revenue laws as applied to the property of the bank, and it is in favor of the exemption claimed under the contract.

In *Murdock* v. *City of Memphis,* 20 Wall. 590, it was held that, under the provisions of the act of February 5, 1867, c. 28, 14 Stat. 385, of which section 709 of the Revised Statutes is substantially a transcript, it was essential to the jurisdiction of this court to review a question decided in a state court, that one of the questions mentioned in the Federal statute must have been raised and presented to the state court, and that it must have been decided by the state court against the right claimed or asserted by plaintiff in error under the Constitution, treaties, laws or authority of the United States. To the same effect are *New Orleans Water Works Co.* v. *Louisiana Sugar Refining Co.,* 125 U. S. 18; *St. Paul, Minneapolis & Manitoba Railway* v. *Todd County,* 142 U. S. 282.

We cannot, therefore, review the decision of the state court allowing the claim of exemption from taxation of the capital stock of the bank, although the consequence is that in these cases both the capital stock and the shares thereof in the hands of the shareholders escape any taxation other than the charter tax.

Accepting, as we do, the authority of the *Farrington case* for the point therein decided, which exempts the stock in the hands of the shareholders from any further tax than that which is provided for in the charter, and being concluded in this case by the decision of the Supreme Court of Tennessee in favor of the exemption of the capital stock of the corporation, we are not here called upon to examine the validity of the claim of the bank as to the decision of this court in cases preceding that of Farrington, where counsel allege it has been determined that both the corporation and the shares of stock in the hands of the shareholders are exempt from further taxation under clauses which are said to be similar to those in the charter under consideration.

In this case of *The Bank* v. *The State of Tennessee,* for the use of the city of Memphis, (the first of the above entitled actions,) the Supreme Court held that the bank was liable to pay the municipal taxes under the revenue law, (section 3, chapter 26, Extra Session Acts, 1891,) above mentioned, upon its surplus and undivided profits. Section 3 of that act has already been referred to, but the material portion of it is here set forth, and is as follows :

"Provided, that the surplus and undivided profits in such bank, banking association or other corporation shall be assessable to said bank or other corporation, and the same shall not be considered in the assessment of the stock therein."

The corporation, plaintiff in error, demands the same exemption from taxation on its surplus that has been accorded it for its capital stock, and it bases its contention upon the same clause of exemption in its charter. We think it cannot be sustained as to the surplus, which we believe is taxable under the law above quoted. This whole demand of exemption from taxation made by the bank and its shareholders must be con-

sidered with reference to the general rule governing claims of that nature. It is well known, has long existed, and is undoubted. *New Orleans City & Lake Railroad* v. *New Orleans*, 143 U. S. 192, 195; *Vicksburg & Pacific Railroad* v. *Dennis*, 116 U. S. 665, and many cases there cited; *Farrington* v. *Tennessee*, 95 U. S. 679, 686; *West Wisconsin Railway* v. *Supervisors*, 93 U. S. 595; *Tucker* v. *Ferguson*, 22 Wall. 527.

These cases show the principle upon which is founded the rule that a claim for exemption from taxation must be clearly made out. Taxes being the sole means by which sovereignties can maintain their existence, any claim on the part of any one to be exempt from the full payment of his share of taxes on any portion of his property must on that account be clearly defined and founded upon plain language. There must be no doubt or ambiguity in the language used upon which the claim to the exemption is founded. It has been said that a well founded doubt is fatal to the claim; no implication will be indulged in for the purpose of construing the language used as giving the claim for exemption, where such claim is not founded upon the plain and clearly expressed intention of the taxing power.

The capital stock of a corporation and the shares into which such stock may be divided and held by individual shareholders are two distinct pieces of property. The capital stock and the shares of stock in the hands of the shareholders may both be taxed, and it is not double taxation. *Van Allen* v. *Assessors*, 3 Wall. 573; *People* v. *Commissioners*, 4 Wall. 244, cited in *Farrington* v. *Tennessee*, 95 U. S. 687.

This statement has been reiterated many times in various decisions by this court, and is not now disputed by any one. In the case last cited, Mr. Justice Swayne, in delivering the opinion of the court, enumerated many objects liable to be taxed other than the capital stock of a corporation, and among them he instanced, (1.) the franchise to be a corporation; (2.) the accumulated earnings; (3.) profits and dividends; (4.) real estate belonging to the corporation and necessary for its business; and he adds that "this enumeration shows the search-

ing and comprehensive taxation to which such institutions are subjected where there is no protection by previous compact." And in *Tennessee* v. *Whitworth*, 117 U. S. 129, at page 136, Mr. Chief Justice Waite, in delivering the opinion of the court, says: "That in corporations four elements of taxable value are sometimes found. First, the franchise; second, the capital stock in the hands of the corporation; third, the corporate property; and, fourth, the shares of capital stock in the hands of the individual stockholders."

The surplus belonging to this bank is "corporate property," and is distinct from the capital stock in the hands of the corporation. The exemption, in terms, is upon the payment of an annual tax of one half of one per cent upon each share of the capital stock, which shall be in lieu of all other taxes. The exemption is not, in our judgment, greater in its scope than the subject of the tax. Recognizing, as we do, that there is a different property in that which is described as capital stock from that which is described as corporate property other than capital stock, and remembering the necessity there is for a clear expression of the intention to exempt before the exemption will be granted, we must hold that the surplus has not been granted exemption by the clause contained in the charter under discussion. The very name of surplus implies a difference. There is capital stock and there is a surplus over, above and beyond the capital stock, which surplus is the property of the bank until it is divided among stockholders.

The case of *Bank* v. *Tennessee*, 104 U. S. 493, does not hold to the contrary of this doctrine. This question was not therein discussed or decided. The question which was decided related only to the taxation of real property not used by the bank in its business, and it was held liable to taxation.

The case is no authority for the proposition contended for here, namely, that the whole surplus of this bank is exempt from taxation. No individual shareholder has any legal right to claim any portion of this surplus; until divided by the board of directors it remains the property of the corporation itself, and in the sense in which the words "capital stock"

are used in the exemption clause the surplus does not form any part thereof. It is said that the purpose of incorporating a bank is to enable the institution to accumulate profits and to make dividends out of them, and that the dividends cannot be made until the profits have been accumulated, and that under this ruling profits would come under the description of surplus to be taxed before distribution in a dividend. It is true that dividends cannot rightfully be made until profits have accumulated; but it is one thing to accumulate profits each six months or annually and then divide them among the stockholders by way of dividends, and quite another thing to accumulate profits year after year, and, while still declaring dividends, accumulate a surplus which is not so divided. The sums accumulated by way of profit between the regularly recurring dividend days might not be regarded as surplus, provided those profits were regularly distributed in dividends. The surplus in this case is clearly not of that kind which has been saved for the purpose of being distributed by dividends. It may be true that the general effect of a tax on this surplus might indirectly operate upon the shareholder by possibly lessening the value of his shares to some extent, but that is not the same as if a tax had been laid upon those shares. In levying the charter tax it was conceded that the tax has always been measured by the par value of the shares of stock, while the actual value of such shares, because of the large surplus owned by the bank may have been very much greater, and the statute under which the surplus is taxed provides that such surplus must not be considered in the assessment upon the stock; so that provision is made whereby a tax upon the surplus and the charter tax upon the shares of stock will neither be double nor unjust taxation. Although a surplus may be required by the national banking act, and also by the laws of good and safe banking, yet we do not perceive that this fact has any material effect upon the question.

We are, therefore, of opinion that the surplus was properly taxed, and that the bank's claim of exemption as to such surplus is without foundation in law.

*These views lead to a reversal of so much of the judgment as is against the shareholders, and the cases are, therefore, remanded to the state court for further proceedings in conformity with this opinion.*

MR. JUSTICE WHITE concurred in so far as the decree recognized the exemption of the shares of stock from all taxation except that enumerated in the contract, but dissented from the conclusion as to the power to tax the surplus and undivided profits.