BANK OF COMMERCE v. TENNESSEE, *for the use of* MEMPHIS.

BANK OF COMMERCE v. TENNESSEE AND SHELBY COUNTY.

PETITION FOR REHEARING.

Nos. 668, 669. Received May 7, 1896.—Decided May 25, 1896.

The mandates in these cases (161 U. S. 134,) are recalled, and so much of the judgment of the state court as permits a recovery against the holders of the old stock in the bank is reversed; and the judgment, so far as it permits a recovery for taxes assessed against the holders of the new shares in the bank, is affirmed.

PETITIONS for rehearing. The case is stated in the opinion.

*Mr. S. P. Walker* and *Mr. C. W. Metcalf* for petitioners.

*Mr. R. J. Morgan, Mr. T. B. Turley* and *Mr. William H. Carroll*, opposing.

MR. JUSTICE PECKHAM delivered the opinion of the court.

This is a petition for a rehearing of some of the questions heretofore decided in these cases. A decision was rendered in them a short time ago, and a portion of the judgment in each case was reversed, and the cases remanded to the Supreme Court of Tennessee for further proceedings therein. 161 U. S. 134. Application is now made on the part of the defendants in error in each case for a rehearing of the same upon the question of the jurisdiction of this court to review the decision of the state court in regard to the exemption from taxation of the so called new stock, being stock that was issued since the adoption of the constitution of 1870. Leave was given both parties to submit briefs upon the question of jurisdiction, as also upon the merits of the question sought to be reviewed.

Such briefs have been received, and we proceed to decide the question.

The bank was chartered in 1856 under the name of the Chattanooga Savings Institution, which name was subsequently changed to the Bank of Commerce, and its place of business moved to Memphis. In the charter was contained the following clause: "Said institution shall have a lien on the stock for debts due it by the stockholders before and in preference to other creditors, except the State for taxes, and shall pay to the State an annual tax of one half of one per cent on each share of the capital stock, which shall be in lieu of all other taxes." On the day of the adoption of the new constitution, May 5, 1870, the capital stock of this institution was $200,000. The second section of the charter contains this provision: "The capital stock of said company shall be divided into shares of $50 each, and when 200 shares have been subscribed and the sum of one dollar per share paid therein, the shareholders may meet and elect five directors." By section 4 it is provided that "it may receive on deposit any and all sums not less than one dollar per week offered as stock deposits; . . . and when such deposits amount to $50 it may at the option of the depositor become stock in the institution."

It appears that on sundry days prior to June 1, 1887, the capital stock of the bank had been regularly increased under this provision in its charter to $600,000, and on the 17th of March, 1890, and on sundry days prior to June 1, 1890, it was again regularly increased to $1,000,000. There was no maximum capital fixed in the charter. In 1870, while the capital stock of the bank stood at $200,000, the new constitution of the State was adopted, which provided for the taxation of all property, which provision would include the shares issued since 1870, if they are not protected by the exemption clause in the charter above quoted.

These suits were brought by the defendants in error against the bank and the shareholders for the purpose of recovering the amount of taxes which had been assessed for several years then last past against the parties defendant, the bank and the

shareholders. In the actions it was sought to recover either against the bank on its capital stock or against the shareholders by virtue of their ownership of the shares of the capital stock. It was not contended that both were liable to pay the tax, but that one or the other should be held liable. A single stockholder was chosen to represent the stockholders generally, and he was one of the holders of what may be termed the new shares — that is, shares issued since the adoption of the constitution of 1870. This was done under an arrangement between the parties so that all the stockholders need not be made parties to the action.

The answer of the plaintiffs in error, the bank and the stockholders, claimed a total exemption from all taxation, both on the part of the bank and shareholders excepting the tax provided for in the charter. Thus the claim of the State was that the bank or all the shareholders were taxable under the provisions of the general tax laws of the State, and it left it to the court to say which were thus taxable. But the State also claimed that if the old shares of stock were not taxable, the new shares issued after 1870 were taxable, as they came into existence after the constitution provided for the taxation of all property, and they were not subject to the exemption clause contained in the charter of the bank. So the question submitted to the state court was, which of these two classes shall be taxed; or, if the old shareholders are not to be taxed, can the new shareholders be taxed. The Supreme Court of the State held that all the shareholders, both old and new, were proper subjects of taxation; that the exemption clause in the charter did not apply to either, but it applied to the capital stock of the bank, and judgment was therefore decreed for a recovery against all the shareholders of both old and new stock for taxes assessed under the general taxation laws of the State. In the course of the opinion delivered by one of the learned judges of the state court, which was concurred in by the majority, it was stated that there was no difference between the rights of the shareholders of the old and the new stock with reference to the right of exemption from taxation under the charter clause ; that if the old shares were exempt

the new shares were also exempt, and that the contract covered both classes of stock in the same way and to the same extent; but the judgment of the court was that neither class of stockholders was exempt from taxation on account of the shares of stock held by it, that the exemption clause applied entirely to the capital stock, and that hence the shares of stock were liable to taxation under the general laws of the State, and judgment was ordered against all the shareholders, both of the old and the new stock accordingly. Judgment at the same time went in favor of the bank decreeing its exemption from taxation under those laws of the State.

The bank and the shareholders through Mr. Omberg, their representative, sued out a writ of error from this court, and the judgment of the state court was thereby brought here for review. The claims of the parties upon that writ of error were on the part of the plaintiffs in error that the whole judgment of the state court was wrong; that neither the shareholders of the old nor of the new stock were liable to pay any amount of taxes other than the tax provided for in the charter, and that the same exemption applied to the bank. The defendants in error claimed that the whole judgment of the state court was right; that all the shareholders were properly assessed, but that if this were not so and the holders of old shares were exempt by reason of the clause in the charter, such clause did not apply to the holders of the new shares of stock, and that they were liable in any event, and that, therefore, the judgment as against such new shareholders was right, and to that extent the judgment should be affirmed, even if it should be reversed as to the holders of the old shares of stock. This court held that, as to the holders of the old shares, the judgment was wrong, as the exemption in the charter applied to the holders of the shares of stock and not to the capital stock itself. Concerning the further question whether the judgment was right as against the holders of the new shares of stock, the court held that it would not review the decision of the state court on that question; that as the state court had granted the exemption claimed by the holders of the new shares by virtue of the contract clause in the charter, this

court had no jurisdiction to review that decision, and, therefore, refused to do so. The whole judgment against all the stockholders, both of the new as well as of the old shares of stock, was reversed. In coming to that conclusion and in reversing the whole judgment we think this court inadvertently fell into error. The error consisted in mistaking a certain statement in a portion of the opinion of the court below for the judgment which it actually rendered. Instead of granting the exemption the court refused it entirely, and the judgment which it actually rendered was against all the shareholders alike, both of the old and of the new shares, but in the opinion the court stated that no difference existed between the holders of the old as compared with those of the new shares of stock, and that the holders of the new shares were entitled to the exemption from the tax to the same extent that the holders of the old shares were, but, as the court determined, neither the old nor the new shareholders were entitled to such exemption.

The material matter in the case was the judgment, and the judgment was against all the shareholders, so when that judgment was brought before this court by writ of error on the part of the shareholders, the question for this court was to determine whether or not there was error in that judgment. In the determination of that question no effect can be given the *opinion* of the state court *in favor* of the plaintiffs in error upon one ground, so long as it is rendered entirely immaterial by the *judgment* of that court *against* the plaintiffs in error upon another ground. It is our duty to look at the whole judgment as it comes before us, and if any portion of it be correct and is so stated as to be separable from and independent of the other portion which we find to be erroneous, it is our duty to affirm that portion in which we find no error and reverse that portion which we decide to be wrong. Therefore we think it is our duty to examine the question whether the judgment brought here for review is not right as against the holders of the new shares on the ground that they were not included in the charter clause providing for exemption from taxation, because their stock was issued since the constitution

of 1870 was adopted.   Even if the opinions of the state court were a part of the record, as is claimed by counsel for the plaintiffs in error, no different result would follow on that account.   Being a part of the record merely gives the court a right to look into these opinions for the purpose of discovering the ground upon which the judgment of the court actually proceeded.   Looking at them we find, as reasons for the judgment of the state court against all the shareholders, that the exemption clause of the charter applied to the capital stock of the bank and not to the shareholders in any event.   Looking further into the opinion we find the added statement that if the exemption clause had applied to the holders of the old shares it would equally have applied to the holders of the new, as they were both situated alike, and if one class were entitled to exemption the other was also.   That opinion upon the latter subject is an abstract one, upon which no judgment was entered, because the state court held that neither class was entitled to exemption and directed judgment against them all.   Under these circumstances it seems plain to us that in refusing to look into the question whether the judgment, so far as it affected the holders of the new shares only, was right or wrong, we failed to exercise our appropriate jurisdiction, and it is our duty, upon the question being now brought to our attention, to retrace our steps and examine the question and determine for ourselves whether that portion of the judgment of the state court enforcing taxation of the holders of the new shares of stock ought not to be upheld although for a different reason than that which controlled the action of that court.

The case of *Murdoch* v. *City of Memphis*, 20 Wall. 590, and other similar cases are not in point.   The purpose of examining to see whether there is not some question other than a Federal one, decided in the case, is to *sustain* thereon the judgment under review.   In this case the plaintiffs in error are not seeking a question of local law upon which to *sustain* the judgment against them.   If we find the Federal questions properly decided as to one class of persons affected by the judgment we must sustain that part of it, although we come

to that conclusion for a different reason from that expressed by the state court, and one which upon that point is in conflict with its opinion but not with its judgment. So in the case suggested by counsel, of separate actions against the stockholders and the bank, and a decision by the state court that the holders of the new shares were exempt under the contract clause. Of course, no decision of that kind could be reviewed here because the claim was allowed by the state court, and judgment went in his favor. To make it parallel with this, the court should have held the holder of the new shares liable and entered judgment against him, while stating in its opinion that if the holders of old shares had been exempt he would have been also exempt, but as they were not, neither was he. Upon his writ of error to this court we could say that the judgment was right, because although the holders of the old shares were exempt, yet the holders of the new shares did not stand in the same position, and they were not exempt. The judgment would be upheld although for a different reason.

We come then to the merits of the subject. In determining the question whether the state court was right in adjudging the holders of the new shares of stock liable to assessment by reason of their ownership of that stock, (no matter for what reason such determination was reached,) it is necessary to see what the provisions of the charter were in relation to this increase of capital stock. We see by the second section above quoted that no limitation was therein prescribed of the amount of capital stock of the bank, and the provision for the increase of the capital stock, as mentioned in section 4 of the charter, makes the depositor the person who is to decide whether the stock shall be increased or not, for by that section the depositor when depositing his moneys as a stock depositor in the bank has himself the option when the deposit amounts to $50 or more to call for and to have scrip for stock issued to him therefor. By this provision it cannot be claimed that the State entered into such a contract with future depositors who might choose to demand stock for their deposits, that the provision relating thereto could not be changed by

the legislature. It was a provision in relation to one of the general powers of the corporation to issue stock which might be changed from time to time as the legislature in its discretion might think proper, so long as no vested right of property accruing prior to the legislative amendment was unfavorably affected thereby. We think there was no vested right on the part of the future depositor to make a stock deposit, and claim the issuing of a similar amount of stock to him, which a legislature could not cut off. If before making any such deposit the legislature altered that provision in the charter and prohibited any such kind of deposit thereafter, we think it clear that no vested right of a future depositor was thereby interfered with. We have held that the clause in the charter of this bank providing for taxation amounted to a contract that the shares of stock in the hands of the shareholders should be exempt from further taxation than that which is provided in the charter. Is the language in the charter to be extended to the shares of stock issued subsequently to the adoption of the constitution of 1870 ? In other words, does the contract obligation attach to and form a part of the stock so issued to the same extent as if the stock had been issued prior to 1870 ? We are inclined to think not. Full effect can be given to the charter by confining it to the shares of stock that might be issued under its provisions so long as the constitution of the State was not altered or a provision thereof adopted providing for the taxation of such property. Applying the rule which is always applied by this court in such cases, that the claim for exemption must rest upon language in regard to which there can be no doubt as to its meaning, and that the exemption must be granted in terms too plain to be mistaken, the claim for exemption for this subsequently issued stock cannot be maintained. This rule for the construction of exemption from taxation clauses in acts of the legislature is referred to in the opinion in *Phœnix Fire & Marine Insurance Co.* v. *Tennessee,* one of these cases and decided at the same time. 161 U. S. 174.

It is true there is an unlimited right to increase the capital stock of this bank under the fourth clause in question, but

it must be done in a certain way. The bank has no right separate and apart from the depositor to increase its stock, and the depositor's right is based upon his depositing the money in the bank as a stock depositor and calling for an issue of stock when it amounts to $50, or over, for the amount of such deposit. We think that the legislature might prohibit the further issue of capital stock in this corporation under this section. By the enactment of the charter there was no contract therein to forever continue this power to deposit and make such deposits a claim for stock therefor. There is no such language in terms, and none should be implied. It amounted to nothing more than a legislative license, which might be availed of by any depositor, but which the legislature might at any time revoke by thereafter prohibiting the issuing of stock in return for deposits. If the legislature could thus absolutely prohibit the further issuing of stock, could it not also provide that no stock should be thereafter issued unless subject to taxation as other property in the State? We see no reason to doubt the legislative capacity in that respect. Of course, the adoption of a constitutional provision of the same nature would be subject to the same rule. We do not see that by the adoption of the constitution of Tennessee in 1870, which provided for the taxation of all property, any contract obligation was impaired so far as regards the rights of the bank or the owners of the shares of stock issued subsequent to the adoption of the constitution. The constitution impaired no obligation of an existing contract. It prevented the subsequent making of one. No depositor could claim a contract or any vested right to make a deposit under the provision of section 4 of the act, and then claim an exemption from taxation of such stock where the deposit was made and the stock issued after the adoption of the constitution of 1870.

In *Pearsall* v. *Great Northern Railway Co.*, 161 U. S. 646, we held that a clause in a charter of a railroad corporation granting it certain powers to consolidate with or become the owner of other railroads was not such a vested right that it

could not be rendered inoperative by a subsequent statute passed before the company had availed itself of this power granted it by a former statute. We held that the power so conferred, so long as it was unexecuted, was within the control of the legislature and might be treated as a license, and be revoked by the legislature if it so chose. Much of the reasoning of that case is applicable here. We think the power of the legislature to alter the terms upon which stock might be subscribed is more clear than was its power in the case of *Pearsall, supra.* We assume in this case the legislative power to grant an unlimited right to increase the capital stock of the bank. That is a question of the power of the legislature of the State, and the decision of the state court in regard to the power of the legislature in such a case is one which we follow. Admitting the right to grant such power, it does not follow that it may not be taken away by a subsequent legislature, and if when the stock is issued there is a provision in force in the State for the taxation of all property, we do not think the clause providing for the exemption of the stock applies to such stock thus issued.

It is urged that this right to issue stock in exchange for deposits is a valuable franchise of the bank given to it by this charter, accepted by it, and held as a contract secure from any assault by state legislation. We do not think that it is thus secured, because we are of opinion that it is not of that contractual nature which the Federal Constitution prevents any impairment of by state legislation. As has been seen by reference to the above case of *Pearsall* v. *Railway Co.,* all provisions in a charter granting rights or powers to a corporation do not partake of the nature of a contract, which cannot for that reason be in any respect altered or the power recalled by subsequent legislation. Where no act is done under the provision and no vested right is acquired prior to the time when it was repealed, the provision may be validly recalled, without thereby impairing the obligation of a contract. The power to issue stock in return for deposits is of that kind which we think is subject to legislative power of repeal or of regulation so long as the action of the legisla-

ture interferes with no rights which have become vested before the passage of the act. Many cases bearing upon this subject are to be found cited in the arguments of counsel and in the opinion of this court in the *Pearsall case*, and it is unnecessary for us to further elaborate the question. Having the power to repeal altogether the grant to issue stock upon the making of stock deposits, as above stated, we think the power to permit it to be issued subject to taxation would be within the power of the legislature. This is in substance the effect of the constitution of 1870 providing for the taxation of all property. The clause of exemption no longer applies to shares of stock thereafter issued.

We think, therefore, the judgment of the Supreme Court of Tennessee adjudging a recovery against the shareholders of the new stock issued since 1870 was, to that extent, correct, and our former decision, which reversed the whole judgment of the state court as against the shareholders, must be amended.

*The mandate will be recalled; so much of the judgment of the state court as permits a recovery against the holders of the old shares of stock in the bank is reversed; the judgment so far as it permits a recovery for taxes assessed against the holders of the new shares in the bank is affirmed, and the cases remanded to the state court for further proceedings not inconsistent with this opinion; and it is so ordered.*