**FAMILY AID ASS'N OF UNITED HOUSE OF PRAYER FOR ALL PEOPLE v. UNITED STATES.**

No. 44488.

Court of Claims.
March 3, 1941.

Howe P. Cochran, of Washington, D. C. (Margaret F. Luers, of Washington, D. C., on the brief), for plaintiff.

Elizabeth B. Dairs, of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, BOOTH, and GREEN, Judges.

WHITAKER, Judge.

The plaintiff sues to recover income taxes for the years 1931, 1932, and 1934 on the ground that it is exempt under the terms of section 103 of the Revenue Act of 1928 (45 Stat. 791, 812), and the same section of the Revenue Act of 1932 (47 Stat. 169, 193, 26 U.S.C.A.Int.Rev.Code, § 101). These sections provide that the following organizations, among others, are exempt from taxation:

"(3) Fraternal beneficiary societies, orders, or associations, (A) operating under the lodge system or for the exclusive benefit of the members of a fraternity itself operating under the lodge system; and (B) providing for the payment of life, sick, accident, or other benefits to the members of such society, order, or association or their dependents;

\* \* \*

"(10) Benevolent life insurance associations of a purely local character, mutual ditch or irrigation companies, mutual or cooperative telephone companies, or like organizations; but only if 85 per centum or more of the income consists of amounts collected from members for the sole purpose of meeting losses and expenses."

The plaintiff is incorporated under the laws of the District of Columbia, providing for the incorporation of fraternal beneficial associations, "for the purpose of establishing and maintaining friendly intercourse among its members and assuring them a decent burial." It was organized and thereafter dominated by Charles M. Grace, who was the Bishop and supreme authority of a negro church known as "The United House of Prayer for All People," and also known as the "Church on the Rock of the Apostolic Faith." The members of the association were confined to members of this church, which had local churches in New York, Pennsylvania, Maryland, Virginia, North Carolina, South Carolina, and Georgia. It was run for the sole purpose of providing a decent burial for its members.

■ It is clearly not exempt under section 103(10) of the revenue act for the reason, if none other, that it was not an association "of a purely local character," inasmuch as it had branches in most of the churches situated in the states above named.

If it is exempt at all, it is exempt as a fraternal beneficiary society under the provisions of section 103(3). The first requisite for exemption under this subsection is that the society must operate "under the lodge system or for the exclusive benefit of the members of a fraternity itself operating under the lodge system." The second requisite is that it must provide for the payment of life, sick, accident, or other benefits to its members. The plaintiff complies with the second requisite.

One may comply with the first requisite in either one of two ways: either it must operate under the lodge system itself; or if it does not do so, it must be operated for the exclusive benefit of the members of a fraternity that operates under the lodge system.

■ The only testimony in the record as to whether or not this organization itself is a fraternal beneficiary society operating under the lodge system is the following, elicited on cross-examination:

"X Q. Does the Family Aid, then, have branches of the church in all of these states? A. Yes, sir.

"X Q. Are they like chapters in a Masonic organization? A. Just about like that.

"X Q. A fraternal organization? A. Yes, ma'am. It is seemingly a part of the church, because the church clerks collect the money and forward it, without consideration, other than what the Bishop may give them out of his own pocket. I don't know whether he does or not."

There is no testimony to show the principles and purposes of the association, except that it was a burial association; nor is there testimony to show what sort of ritual was followed at the meetings, or that any ritual was followed at all. No statement of principles nor ritual is provided for in the constitution and bylaws. Nor do the constitution and bylaws provide for any meetings, except once a year for the purpose declared in section 2 of the bylaws, which reads: "Once each year a sermon shall be preached to the Association. All members are required to be present and it shall contribute to the cause of Christ." In the testimony no mention is made of any meetings, and we are convinced that none were ever held, unless it was the meeting above referred to. Indeed, no provision was made for a separate organization of the members in the various local churches. The testimony shows that the entire activities of the association were the collection of dues from the members, the making of assessments against them when a member died, and the payment of sums for funeral expenses upon the death of a member. Under such facts it cannot be said that the association is a fraternal beneficiary society operating under the lodge system.

The testimony does show, however, that only members of The United House of Prayer for All People could become members of the society; but the testimony shows that The United House of Prayer for All People is a religious, not a fraternal organization, a Christian church founded on the Bible, and dominated by its Bishop. In answer to the question, "Is it a nondenominational organization, or interdenominational organization, or what is it?" one of the witnesses said, "It is his denomination" (meaning the Bishop's denomination).

■ One of the fundamental tenets of the Christian church is the brotherhood of man, and so it might be called a fraternal society, but we think it clear that Congress did not have in mind a church when it spoke of "a fraternity * * * operating under the lodge system." Churches are referred to in section 103(6) of the Act as "religious" organizations. However much alike may be a fraternal organization and a Christian church, we are satisfied Congress did not have in mind a church or a religious organization when it spoke of a fraternity operating under the lodge system.

■ The reasons for the exemption of a burial association operated for the exclusive benefit of members of a church are just as potent as are those for the exemption of a burial association operated for the exclusive benefit of a fraternal society. But be that as it may, the fact remains that Congress did not exempt an association operated for the benefit of the members of a church, but only those operating for the benefit of the members of a fraternal association operated under the lodge system. It is well recognized that a statute granting exemption is strictly construed

against the person claiming the exemption. Bank of Commerce v. Tennessee, 161 U.S. 134, 146, 16 S.Ct. 456, 40 L.Ed. 645; United States Trust Company v. Anderson, 2 Cir., 65 F.2d 575, 89 A.L.R. 994, and cases cited.

The defendant also insists that this organization is not exempt because the Bishop received 25 percent of its gross receipts. We do not think this position is well taken. This 25 percent was allowed by the Commissioner of Internal Revenue as a proper deduction from gross income as compensation of officers. It was a sum paid to the Bishop for his services to the organization. The value of these services cannot be minimized. One of the witnesses stated, "Well, the Bishop is a very influential man with his members, and I do not think we could get any members in the association without the Bishop." He, no doubt, did not solicit members directly, but members were secured primarily because of him. His services were essential to the continuance of the business of the association. The sum paid him was not a division of the profits of the enterprise, but compensation for services rendered.

We hold that the plaintiff's petition must be dismissed. It is so ordered.