Anne G. **MOHOLY**, as Administratrix of the Estate of Philip F. Moholy, Deceased, and Anne Moholy, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 14912.

United States Court of Appeals
Ninth Circuit.

June 23, 1956.

Sherwood & Lewis, Clyde C. Sherwood, John V. Lewis, San Francisco, Cal., for appellant.

Charles K. Rice, Asst. Atty. Gen., I. Henry Kutz, Lee A. Jackson, Robert N. Anderson, Davis W. Morton, Jr., Sp. Assts. to Atty. Gen., Lloyd H. Burke, U. S. Atty., San Francisco, Cal., for appellee.

Before DENMAN, Chief Judge, LEMMON, Circuit Judge, and SOLO-MON, District Judge.

DENMAN, Chief Judge.

This is an appeal from a judgment of the United States District Court for the Northern District of California, denying appellant a refund of federal income tax.[1] The District Court held that a San Francisco fireman's sick leave pay was not an amount " 'received through accident or health insurance * * *, as compensation for * * * sickness * *' " and consequently was properly included in his gross income. Appellant contends that this was improper construction of the exclusion provided for in Section 22 (b) (5) of the Internal Revenue Code of 1939.[2]

Appellant's late husband, a Captain in the San Francisco Fire Department, had bronchitis and was unable to work for 35 days in 1949. Under the provisions of the City Charter and certain Ordinances and Regulations [3] he was paid $489.17, and the suit is for a refund of the tax attributable to that amount. The Fire Department "Sick Rule" provides for a leave of absence with full pay in case of illness. Firemen employed at least one year are entitled to two weeks leave annually. This leave is cumulative when not used, but the maximum leave may not exceed six months. A fireman must report illness immediately, file physician's certificates and receive visits from the Department physician and the battalion chief. Penalties are provided for abuses of the rule. The firemen pays no premiums, and the City of San Francisco carries no commercial insurance to cover the payments made to men on sick leave and maintains no special fund for this purpose. The fireman has an enforceable right to these payments.

26 U.S.C. § 22(b) (5) as amended in 1942, provides:

"Sec. 22. Gross Income.

\* \* \* \* \* \*

"(b) Exclusions from Gross Income.—The following items shall not be included in gross income and shall be exempt from taxation under this chapter:

\* \* \* \*

"(5) [as amended by Secs. 113 and 127, Revenue Act of 1942, c. 619, 56 Stat. 798] Compensation for injuries or sickness.—Except in the case of amounts attributable to (and not in excess of) deductions allowed under section 23(x) in any prior taxable year, amounts received through accident or *health insurance* or under workmen's compensation acts, as compensation for personal injuries or sickness, *plus the amount* of any *damages received* whether by suit or agreement *on account* of *such* injuries or *sickness*, and amounts received as a pension, annuity, or similar allowance for personal injuries or sickness resulting from active service in the armed forces of any country; \* \* \*." [Emphasis added.] 26 U.S.C. 1952 ed., Sec. 22.

Statutes sought to be construed as exempting income from taxation, if doubtful as to such a character are to be deemed as not creating such exclusion. The Supreme Court in an analogous case so holds, stating:

"Yet those who seek an exemption from a tax must rest it on more than a doubt or ambiguity. Bank of Commerce v. [State of] Tennessee, 161 U.S. 134, 146, 16 S.Ct. 456, 460, 40 L.Ed. 645; Id., 163 U.S. 416, 423, 16 S.Ct. 1113, 1116, 41 L.Ed. 211. Exemptions from taxation cannot

**1.** Moholy v. United States, D.C.N.D.Cal. 1955, 132 F.Supp. 32.

**2.** Similar provisions are now in 26 U.S.C. §§ 104, 105, 106. See Comment, Taxation of Employee Accident and Health Plans Before and Under the 1954 Code, 64 Yale L.J. 222 (1954).

**3.** Charter of City and County of San Francisco, § 153; Civil Service Commission Rule 32, § 11; Rules of the San Francisco Fire Department §§ 406-431.

rest upon mere implications. United States Trust Co. [of New York] v. Helvering, 307 U.S. 57, 60, 59 S.Ct. 692, 693, 83 L.Ed. 1104. As stated by Mr. Justice Cardozo in Trotter v. [State of] Tennessee, 290 U.S. 354, 356, 54 S.Ct. 138, 139, 78 L.Ed. 358, 'Exemptions from taxation are not to be enlarged by implication if doubts are nicely balanced.' And see Pacific Co., Ltd. v. Johnson, 285 U.S. 480, 491, 52 S.Ct. 424, 426, 76 L.Ed. 893. Hence broad, generalized statutory exemptions have frequently been construed narrowly and confined to those situations where the subject matter of the exemption was directly, not indirectly or remotely, involved. Murdock v. Ward, 178 U.S. 139, 20 S. Ct. 775, 44 L.Ed. 1009; Hale v. [Iowa] State Board of Assessment and Review, 302 U.S. 95, 58 S.Ct. 102, 82 L.Ed. 72; United States Trust Co. [of New York] v. Helvering, supra."

United States v. Stewart, 311 U.S. 60, at page 71, 61 S.Ct. 102, at page 109, 85 L.Ed. 40.

The doubt as to whether an agreement to pay wages during sickness is wage insurance or health insurance has divided practically evenly the federal courts of appeals and district courts. One court of appeals is on each side of the question. Four district courts are for the liability of the employee to the Government. Four district courts are against such liability.[4]

It will be noted that if health insurance includes loss of wages, that sum would be exempted *twice* if as they usually are they are recovered as a part of "the amount of the damages received" on account of such "sickness" also to be exempted under section 22(b) (5). It is difficult to believe that Congress intended such double exemption and this casts strong doubt that it was the Congressional intent to include wage compensation as a part of health insurance.

It also can well be argued that insurance which provides for the continuation or replacement of wages during sickness, only insofar as it serves to pay medical bills or offset an impairment of the body, is health insurance. That part which represents only the loss of earnings is not compensating for the direct costs of the sickness but for a loss resulting from that sickness. While such provisions may be often found in health policies they actually are a loss-of-wages insurance.

It further seems doubtful that Congress intended to exempt sums from taxation which represent only a replacement of income which would otherwise be taxable,[5] and the legislative history of Section 22(b) (5) supports such a doubt. Shortly before Congress passed the section the Attorney General stated in an opinion that the proceeds of accident insurance were not taxable income since they were akin to a replacement of capital.

"* * * the proceeds of the policy * * * take the place of capital in human ability which was destroyed by the accident."[6]

The House Committee Report accompanying the bill apparently adopted this theory. It stated:

---

4. *For the Government:* United States v. Haynes, 5 Cir., 1956, 233 F.2d 413; Cary v. United States, D.C.D.Neb., 141 F.Supp. 750; Branham v. United States, D.C. W.D.Ky.1955, 136 F.Supp. 342; Oliva v. Commissioner, 25 T.C. ——; Moholy v. United States, D.C.N.D.Cal., 132 F.Supp. 32.

   *For the Taxpayers:* Epmeier v. United States, 7 Cir., 1952, 199 F.2d 508; Priebe v. United States, 4 P–H 1956 Fed. Tax Serv. par. 72,611 (D.Ariz.1956); Adams v. Pitts, D.C.E.D.S.C.1956, 140 F.Supp. 618; Tinsley v. United States, id. at par. 72,606 (W.D.Okla.1956); Herbkersman v. United States, D.C.S.D.Ohio 1955, 133 F.Supp. 495. See also, Comments, 21 U. of Chi.L.Rev. 277 (1954); 51 Mich. L.Rev. 1248 (1953); 39 A.B.A.J. 329 (1953). Cf. Schlenger, Disability Benefits Under Section 22(b) (5), 40 Va. L.Rev. 549 (1954).

5. Cf. Miller v. Hocking Glass Co., 6 Cir., 1935, 80 F.2d 436; E. B. Tousek, 1925, 1 B.T.A. 1164.

6. 1918, 31 Op.Atty.Gen. 304, 308.

"(6) Under the present law it is doubtful whether amounts received through accident or health insurance \* \* \* as compensation for personal injury or sickness \* \* \* are required to be included in gross income. The proposed bill provides that such amounts shall not be included in gross income."[7]

A replacement or a continuance of wages during the period of sickness is not a replacement "of capital in human ability which was destroyed by the accident." Moreover, it is difficult to see any doubt that Congress might have had under the 1917 Internal Revenue Act that insurance proceeds replacing lost income would be taxable income as to the amount over and above that paid in as premiums.

The doubt is intensified by Congress' treatment of *life* insurance in another subdivision of Section 22(b). Prior to 1951, Section 22(b) (1) exempted from taxation:

"(1) Life insurance.—Amounts received under a life insurance contract paid by reason of the death of the insured, \* \* \*."

In 1951, Congress amended this section to exempt:

"(1) Life insurance, etc. Amounts received—

"(A) under a life insurance contract, paid by reason of the death of the insured; or

"(B) under a contract of an employer providing for the payment of such amounts to the beneficiaries of an employee, paid by reason of the death of the employee;

\*    \*    \*    \*    \*    \*

"The aggregate of the amounts excludible under subparagraph (B) by all the beneficiaries of the employee under all such contracts of any one employer may not exceed $5,000."

The Senate Committee Report accompanying this amendment stated:

"Section 22(b) (1) of the code excludes from gross income amounts received under a life-insurance contract paid by reason of the death of the insured, whether in a single sum or otherwise. *However*, by its terms, this provision is limited to life-insurance payments, and the exclusion does not extend to death benefits paid by an employer by reason of the death of an employee \* \* \*" [Emphasis added.]

If employer death benefit plans were "insurance," the 1951 amendment would have been unnecessary. If such death benefit plans were not "insurance" before this amendment, sick leave plans without the benefit of a similar amendment cannot be deemed "insurance."

The judgment is affirmed.

---

7. H.R.Rep. No. 767, 65th Cong., 2d Sess. 29–30 (1918) [1939–1 Cum.Bull. (Part 2) 86, 92]. It has been argued that "Congress probably resorted to the re-turn-of-capital rationale in order to give a legal gloss to an emotional reluctance to tax." Schlenger, note 4, supra, at 552.