**LOUISVILLE TITLE CO. v. LUCAS, Collector of Internal Revenue.**

District Court, W. D. Kentucky, at Louisville. June 30, 1928.

**1. Statutes ⇐188—Words in statute must generally be construed in ordinary sense.**

In construing statutes, where nothing to contrary appears, words used must be construed in their ordinary sense.

**2. Internal revenue ⇐9(26)—Insurance company, which, in addition to insurance business, conducts distinct business, from which it obtains substantial income, is not taxable as insurance company (Revenue Act 1921, §§ 246 247, 1000; Comp. St. §§ 5980n, 6336⅛t(5), 6336⅛t(6).**

If insurance company, in addition to its insurance business, conducts a separate and distinct business, from which it obtains a separate income, it is not subject to taxation under Revenue Act 1921, §§ 246, 247, Comp. St. §§ 6336⅛t (5), 6336⅛t(6), as an insurance company, and therefore is not exempt from taxes imposed under Revenue Act 1921, § 1000, Comp. St. § 5980n, exempting insurance companies which are taxed under the other sections.

**3. Internal revenue ⇐9(26)—Real estate title insurance company, deriving large part of its income from service performed as trustee for bondholders under mortgage deeds of trust, guaranteeing payments of bonds, held not taxable as insurance company (Ky. St. §§ 733, 734, 736; Revenue Act 1921, §§ 246, 247, 1000; Comp. St. §§ 5980n, 6336⅛t(5), 6336⅛t(6).**

Corporation organized as real estate title insurance company under Ky. St. §§ 725–742, investments being regulated under sections 733, 734; 736, which was also engaged in trustee and bond sale service, under which it acted as trustee for bondholders under mortgage deed of trust, preparing bonds, securing permits for their sale, guaranteeing their payment, and marketing them, *held* not exempt from taxation, under Revenue Act 1921, § 1000, Comp. St. § 5980n, as an insurance company taxable under Revenue Act 1921, §§ 246, 247, Comp. St. §§ 6336⅛t(5), 6336⅛t(6), where large part of income was derived from its handling of bonds, though Kentucky Statutes authorize real estate title insurance companies to engage in trustee and bond sales service business.

At Law. Suit by the Louisville Title Company against Robert H. Lucas, Collector of Internal Revenue of the District of Kentucky. Judgment for defendant.

Trabue, Doolan, Helm & Helm, of Louisville, Ky., for plaintiff.

Thos. J. Sparks, U. S. Atty., and Frank A. Ropke, Asst. U. S. Atty., both of Louisville, Ky., C. M. Charest, Gen. Counsel Bureau of Internal Revenue, and E. H. Horton, Atty. Bureau Internal Revenue, both of Washington, D. C., for defendant.

DAWSON, District Judge. In this suit plaintiff seeks to recover of the defendant $704, paid by it to the defendant as collector on July 22, 1922, under section 1000 of the Revenue Act of 1921 (Comp. St. § 5980n), for the year ending June 30, 1923. The suit is bottomed upon the claim that the plaintiff, at the time of the imposition and collection of the tax sought to be recovered herein, was an insurance company other than a life or mutual insurance company, and subject to income taxation under the provisions of sections 246 and 247 of the Revenue Act of 1921 (Comp. St. §§ 6336⅛t[5], 6336⅛t[6]), and that by virtue of the express provisions of sections 246 and 1000 of that· act it was not subject to the capital stock tax imposed by section 1000. The necessary jurisdictional facts appear, and the sole question to be determined is whether or not, under the facts of this case, plaintiff is an insurance company other than a life or mutual insurance company, within the meaning of sections 246 and 1000 of the Revenue Act of 1921. A proper understanding of the case necessitates a somewhat extended statement of the facts.

Plaintiff is a Kentucky corporation organized under the provisions of sections 725 to 742, both inclusive, of Kentucky Statutes, dealing with the organization, conduct, and regulation of the business of real estate title insurance companies. Under the provisions of section 736, Kentucky Statutes, the insurance commissioner of the commonwealth is given the same supervisory and visitorial powers over the business of corporations organized and conducting their business under· the sections referred to as he is given over the business of other domestic insurance companies. Section 733 of Kentucky Statutes provides as follows:

"The capital stock, not exceeding thirty-three and one-third per centum of the minimum amount thereof, of any such corporation organized under this law, or now doing business in this state, may be invested in the acquisition of such books, maps, abstracts or copies of deeds and other instruments as shall be necessary or convenient for the transaction of its business; and such portion of its accumulations as shall be necessary or convenient may be used in the maintenance, enlargement, and improvement of such plant. The remainder of such stock and accumulations shall be invested, except as hereinafter provided, in bonds and mortgages, lien notes or deeds of trust, on unincumbered real estate within the state of Ken-

tucky, worth at least fifty per centum more than the sum loaned thereon; but, in estimating the value of such real estate, the value of the buildings thereon shall be excluded, unless such buildings be insured against fire, and the policy transferred to the corporation, and such insurance shall be continued in force as long as the loan continues; also in bonds of this state or of any other state of the United States, or of the United States, or of any county or incorporated city or town of this state, authorized by law to be issued; also in the stocks of incorporated banks and trust companies of this state, and of national banks of this state, or of adjacent states; also in the first mortgage bonds of railroads of this and other states, bonds or stocks of any bridge, water, street railroad, gas or electric corporations of this state, which have, for two years previous to the time of making the investment, paid interest or dividends of not less than four per centum per annum, and shall have a market value not less than twenty per centum below par. Said capital and surplus may be loaned on the security of any such bonds, stocks or lien notes, bonds and mortgages, and the investments and loans herein authorized may be changed, and the proceeds reinvested as occasion may, from time to time, require, and the evidences of such loans sold and the payment thereof indorsed or guaranteed. No such corporation shall own more than one-sixth of the capital of any bank or corporation, nor invest in nor loan on the stocks and bonds, both included, of any one railroad, more than one-tenth of its capital and accumulated funds, nor in the aggregate shall the investment in and loan on all railroad property exceed one-fifth of its capital and accumulated funds; and no such corporation chartered by this state, and lawfully doing the business herein authorized, shall be compelled to change any investment heretofore legally made."

At all times since its organization plaintiff's business has been conducted and its capital and surplus invested under the provisions of the statutes dealing with real estate title insurance companies, above referred to. During the calendar year 1922 plaintiff's paid-up capital stock was $500,000, of the par value of $100 per share. During the year 1922, $45,600, or substantially 9 per cent. of its capital, and $46,500, or substantially 15 per cent. of its accumulations, or a total of $92,100, were invested in its home office building, and in books, maps, abstracts, etc., necessary for the transaction of its business. Forty per cent. of its paid-up capital stock, amounting to $200,000 was set apart as a guaranty fund, as required by section 734 of Kentucky Statutes, to secure the faithful performance of its insurance contracts, and this amount was invested as is required by that section. The remainder of its capital stock, amounting to $254,400, and the remainder of its accumulations, amounting to $261,836, or a total of $516,236, were invested in or loaned on the security of bonds, mortgage lien notes, or deeds of trust on unincumbered real estate located within the state of Kentucky, as authorized by section 733 of Kentucky Statutes.

From the beginning of its existence plaintiff's business has fallen under two general heads, real estate title insurance and trustee and bond sale service, and has been carried on in substantially the following way:

*Real Estate Title Insurance.*—The plaintiff issues policies of real estate title insurance, for which it receives a fixed and final premium, based upon the amount of the policy and paid at the time of its issual. Solely as a preliminary step to the issual of such policy, the plaintiff examines and prepares an abstract of title to the property the title to which it is proposed to insure. If the title to the property is found to be insurable, the cost of examination of the title is merged in the policy premium; if found to be uninsurable, the person seeking the insurance reimburses the plaintiff for this service.

*Trustee and Bond Sale Service.*—If a person applies to the plaintiff for its trustee and bond sale service, covering a proposed issual of first mortgage real estate 6 per cent. gold coupon bonds, to be secured by mortgage deed of trust to the plaintiff as trustee, on applicant's real property, and this application is approved, plaintiff examines the title to applicant's real property, appraises the property, prepares and causes to be executed the bonds, coupons, and deed of trust to the plaintiff as trustee, securing the payment of the bonds and coupons, causes same to be put to record, and certifies the bonds issued thereunder. As a part of its undertaking plaintiff guarantees the payment of principal and interest of the bonds at maturity, and also insures to the holders of the bonds the deed of trust title. These undertakings are indorsed on the back of each of the bonds. The guaranty of the payment of principal and interest reads as follows:

"The Louisville Title Company guarantees payment to the holder of this bond and

the coupons attached the amount thereof at their respective maturities in lawful money of the United States of America: Provided that the same shall be presented at its office for payment at or within 12 days after maturity, and not otherwise. Upon making such payment said company shall become the owner as by purchase of the bond and coupons so paid."

The guaranty, or, more accurately, the insurance as to the mortgage title, is in this language:

"The Louisville Title Company guarantees to the holder of the within bond that the mortgage therein referred to is valid, and insures him against loss by reason of defects of title to or incumbrance on the premises therein described at the time of recording said mortgage, excepting, however, the defects or incumbrances created by or with the privity of said holder, and said company at its own cost will defend the validity and priority of lien of said mortgage: Provided that said holder shall, within a reasonable time not exceeding ten days after service of any process upon him, notify said company thereof, in writing, and shall call upon said company and give to it the exclusive right to prosecute or defend, as the case may be, any action or proceeding wherein the validity or priority of said mortgage deed of trust, or the existence of such defects or incumbrances, may be drawn in question to the prejudice of said bondholder: Provided further, that the refusal or failure of said bondholder so to notify or to call upon said company and to give it the right so to prosecute or defend such action shall avoid the obligation imposed by this clause."

Plaintiff secures from the proper authorities, where necessary, a permit authorizing these bonds to be sold to the public, the legal fees therefor to be paid by the applicant. The plaintiff thereupon pays to the applicant par for the bonds, plus accrued interest, retaining the bonds as security, so it is said, for the repayment of such advancements, together with 6 per cent. interest thereon. The bonds are marketed by the plaintiff, and the plaintiff retains, not only the amount advanced to the applicant, with interest thereon, but any premium which may be realized from the sale of such bonds. In addition to any premium so realized, the plaintiff receives for its trustee and bond sale service a fixed charge. During the year 1922, and prior thereto, however, the plaintiff did not make separate charges for the different items of service going to make up its trustee and bond sale service. A lump sum was charged the customer for the entire service, and it was so entered upon the books. In 1922, however, and prior thereto, the plaintiff was intentionally including in this lump sum a sufficient amount, in its judgment, to compensate it for guaranteeing the payment of the bonds and coupons and for insuring the mortgage title, but during that period of time plaintiff had not definitely determined that part of the entire charge which should be allocated, respectively, to its guaranty of payment and to its insurance of mortgage title service. During the latter part of 1922, or the early part of 1923, the plaintiff finally settled on 50 cents per $100 as the proper charge for guaranteeing payment of bonds and coupons at maturity, and on $1.75 per $1,000 for mortgage title insurance.

For the calendar year 1922, as shown by the annual statement of the plaintiff filed with the insurance department of the commonwealth of Kentucky, the plaintiff's income was as follows:

| | |
|---|---:|
| Amount of premiums received for insurance (real estate title insurance) | $ 81,873.62 |
| Received for interest | 42,928.57 |
| Fines, load | 546.06 |
| Fees for writing deeds | 8,542.56 |
| Appraisement fees | 720.00 |
| "Premiums on real estate bonds sold and fees for trustee services" | 103,104.48 |
| From all other sources, miscellaneous gain | 7,511.23 |
| Total income | $245,226.52 |

It will thus be observed that, for the calendar year 1922, the amount received by the plaintiff as income for its trustee and bond sale service, exclusive of any interest on money advanced, exceeded the total amount of premiums received for the same period on real estate title insurance, and was equivalent to 42 per cent. of the entire income of the company for that year. In the absence of any showing to the contrary, it may be assumed that the income summary for 1922 is a typical one.

As heretofore stated, the charges against individual customers going to make up the total of $103,104.48 received for bond sales and trustee service, were lump charges. If the books of the company for the year 1922, however, were reconstructed, and a rate of $1.75 per $1,000 should be applied as compensation for mortgage title insurance, and a rate of 50 cents per $100 should be applied as compensation for guaranteeing the payment of mortgage bonds and coupons at maturity, and if the other items embraced in

the total of $103,104.48 were separately stated, that total would be divided as follows:

Mortgage title insurance......... $ 4,877.85
For guaranteeing payment of bonds
and · coupons.................. 41,153.04
Other fees and charges.......... 33,834.56
Tax repaid..................... 12,767.13
Premiums on bonds sold.......... 10,480.47
                                 ——————
Total ......................... $103,313.05
Less refund.................... 208.57
                                 ——————
Balance ...................... $103,104.48

Did these facts entitle the plaintiff to be classed as an insurance company under sections 246 and 1000 of the Revenue Act of 1921, and exempt it from the payment of the capital stock tax imposed by section 1000? Section 246 in part provides:

"Sec. 246. (a) That, in lieu of the taxes imposed by sections 230 and 1000, there shall be levied, collected and paid for the calendar year 1922, and for each taxable year thereafter, upon the net income of every insurance company (other than a life or mutual insurance company) a tax as follows:

\* \* \* \* \* \* `

"(b) In the case of an insurance company subject to the tax imposed by this section—

"(1) The term 'gross income' means the combined gross amount, earned during the taxable year, from investment income and from underwriting income as provided in this subdivision, computed on the basis of the underwriting and investment exhibit of the annual statement approved by the National Convention of Insurance Commissioners;

"(2) The term 'net income' means the gross income as defined in paragraph (1) of this subdivision less the deductions allowed by section 247;

"(3) The term 'investment income' means the gross amount of income earned during the taxable year from interest, dividends and rents, computed as follows:

"To all interest, dividends and rents received during the taxable year, add interest, dividends and rents due and accrued at the end of the taxable year, and deduct all interest, dividends and rents due and accrued at the end of the preceding taxable year;

"(4) The term 'underwriting income' means the premiums earned on insurance contracts during the taxable year, less losses incurred and expenses incurred."

Section 1000 in part provides:

"Sec. 1000. (a) That on and after· July 1, 1922, in lieu of the tax imposed by section 1000 of the Revenue Act of 1918 —

"(1) Every domestic corporation shall pay annually a special excise tax with respect to carrying on or doing business, equivalent to $1.00 for each $1,000 of so much of the fair average value of its capital stock for the preceding year ending June 30 as is in excess of $5,000. In estimating the value of capital stock the surplus and undivided profits shall be included;

\* \* \* \* \* \*

"(b) The taxes imposed by this section shall not apply in any year to any corporation which was not engaged in business (or, in the case of a foreign corporation, not engaged in business in the United States) during the preceding year ending June 30, nor to any corporation enumerated in section 231, nor to any insurance company subject to the tax imposed by ·section 243 or 246."

[1] From the foregoing provisions of the act it is apparent that the right of a corporation to exemption from taxation under section 1000 depends upon whether or not it is an insurance company within the meaning and subject to taxation under the provisions of section 246. This section does not undertake to define the meaning of the term "insurance company," as used therein. We are therefore remitted to the rule that in construing statutes, nothing to the contrary appearing, words used therein must be construed in their ordinary sense and with the meaning commonly attributed to them.

So, when Congress used the term "insurance company" in section 246, it must be presumed that it had in mind the same conception of an insurance company as is held by the·usual run of people informed on the ·subject, viz. a corporation whose capital and efforts are primarily devoted to the earning of income through premiums charged for the issual of its contracts of insurance, of whatever nature they may be. When we speak of an insurance company, we do not have a mental picture of a company also conducting a banking business, a mercantile business, or a stock and bond· brokerage business. Of course, it is a matter of common knowledge and understanding that all insurance companies derive a very material income from the investment of their capital and accumulations in income producing securities and from rents in those cases where a part of the capital, as is usually authorized, is invested in an office building. These items of income, however, are incidental to the real business of the corporation, and do not represent income arising from a separate and distinct business.

The fact that section 246 provides for the

reporting and taxing of these incidental items of income under the head of "investment income" demonstrates, it seems to me, that Congress had the same mental picture of an insurance company and its business and sources of income as is held by the usual run of people. Congress was undoubtedly undertaking, in section 246, to provide for the taxation of all of the income of insurance companies subject to its provisions. In so doing it provided for the taxation of only that income ordinarily understood to be enjoyed by insurance companies, viz. premium income and incidental income, flowing from the investment of its capital and surplus. If it had been the intention of Congress to give those companies which were conducting not only an insurance business, but also some separate and distinct business, the benefit of section 246, undoubtedly provision would have been made for reporting and taxing the income derived from such separate and distinct business. To assume otherwise would be to impute to Congress a deliberate intention to exempt the income of some businesses from taxation altogether, simply because they were conducted by a corporation also engaged in the insurance business.

[2] I think, therefore, we must conclude that if an insurance company, in addition to its insurance business, conducts a separate and distinct business, from which it obtains a substantial income, it is not subject to taxation under section 246, nor exempt from taxation under section 1000.

[3] I can not escape the conclusion that the trustee and bond sale service business of the plaintiff, in large part, is a wholly unrelated and distinct business from the insurance business conducted by it. Certainly, the business of acting as a trustee for bondholders under a mortgage deed of trust, preparing the bonds, securing permits authorizing their sale to the public, guaranteeing their payment and marketing them, is not commonly understood as being a part of or incidental to the insurance business. Of course, a guaranty of the payment of the obligation of another, according to the terms thereof, is not an insurance contract any more than is the indorsement of a negotiable instrument an insurance contract. The only feature of

27 F.(2d)—27

insurance I can discover in the plaintiff's trustee and bond sale service is the mortgage title insurance feature, which is, of course, a typical insurance undertaking. The returns from this feature of the business, however, in 1922, constituted such a small fraction of the entire income received by the plaintiff from its trustee and bond sale service that it cannot be allowed to give character to that entire line of business.

In reaching the conclusions herein announced, I am not unmindful of the fact that all of the activities of the plaintiff in relation to its trustee and bond sale service are specifically authorized by the Kentucky Statutes dealing with the organization and the business of real estate title insurance companies, but the mere fact that the Kentucky Statutes authorize real estate title insurance companies to engage in the trustee and bond sale service business does not make that business insurance business, or make such companies insurance companies, within the meaning of section 246. If such were the law, there could be no uniformity in administering sections 246 and 1000 of the Revenue Act of 1921, or similar provisions in other Revenue Acts of the United States, as a corporation's right to a particular classification would thus depend upon the laws of the state of its incorporation, rather than upon the act of Congress.

I am not impressed with the suggestion that to deny the plaintiff exemption under section 1000 would result in denying to it an exemption accorded to other insurance companies. The law, as herein construed, does not work any such discrimination. The plaintiff has lost the benefit of the exemption granted to an insurance company by voluntarily embarking in a separate and distinct business. The loss of caste flows from the plaintiff's own voluntary act—not from the statute.

For the reasons stated, it follows, of course, that I am of the opinion that plaintiff is not entitled to recover the capital stock tax sought to be recovered herein.

A judgment, with a finding of facts and conclusions of law as herein set out, may be prepared and presented for entry.