## HOME TITLE INS. CO. v. UNITED STATES.
### No. 3547.

District Court, E. D. New York.
June 11, 1930.

Weill, Wolff & Satterlee, of New York City (Hugh Satterlee and I. Herman Sher, both of New York City, of counsel), for plaintiff.

Howard W. Ameli, of Brooklyn, N. Y. (Albert D. Smith, Asst. U. S. Atty., of Brooklyn, N. Y., C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, of Washington, D. C., and E. H. Horton, Atty., Bureau of Internal Revenue, of Washington, D. C., of counsel), for the United States.

GALSTON, District Judge.

This case is presented upon an agreed state of facts.

There are three causes of action set forth in the complaint, each involving the same principle of law. The plaintiff seeks to recover from the defendant in each case a sum of money alleged erroneously to have been collected by the collector of internal revenue for the First district of New York from the plaintiff under protest, and alleges exemption of capital stock tax liability under section 1000 of the 1921 Revenue Act (42 Stat. 294) so far as the first and second causes of action are concerned, and under section 700 of the 1924 Revenue Act (26 USCA § 223 note) as to the third cause of action.

The ground of recovery contended is that by virtue of section 246 of the Revenue Act of 1921 (42 Stat. 262) and sections 243 to 246 of the Revenue Act of 1924 (26 USCA § 1001 note, §§ 1003–1005, and § 1006 note) the plaintiff as an insurance company was not subject to the imposition of any capital stock tax.

Essentially and basically the question for determination is whether the plaintiff company is an insurance company within the meaning of the Revenue Acts in question. If the answer to that question is in the affirmative, then the plaintiff is entitled to the relief which it seeks herein.

The term "insurance company" is not defined in either statute. Recourse, therefore, must be had to such provisions of the statute, if any, as may disclose the intention of Congress in that regard.

Section 1000 of the Revenue Act of 1921 (42 Stat. 294, 295) provides:

"Sec. 1000. (a) That on and after July 1, 1922, in lieu of the tax imposed by section 1000 of the Revenue Act of 1918—

"(1) Every domestic corporation shall pay annually a special excise tax with respect to carrying on or doing business, equivalent to $1 for each $1,000 of so much of the fair average value of its capital stock for the preceding year ending June 30 as is in excess of $5,000. In estimating the value of capital stock the surplus and undivided profits shall be included; * * *

"(b) The taxes imposed by this section shall not apply * * * to any insurance company subject to the tax imposed by section 243 or 246."

It is to be noted that the capital stock tax thus defined shall not apply "to any insurance company *subject to the tax imposed by section* * * * *246.*" (Italics mine.) Thus apparently not all so-called insurance companies, but only such as are "subject to the tax imposed by section * * * 246," are to be relieved from the capital stock tax.

Section 246 (42 Stat. 262) referred to reads as follows:

"Sec. 246. (a) That, in lieu of the taxes imposed by sections 230 and 1000, there shall be levied, collected and paid for the calendar year 1922, and for each taxable year thereafter, upon the net income of every insurance company (other than a life or mutual insurance company) a tax as follows:

"(1) In the case of such a domestic insurance company the same percentage of its net income as is imposed upon other corporations by section 230;

"(2) In the case of such a foreign insurance company the same percentage of its net income from sources within the United States as is imposed upon the net income of other corporations by section 230.

"(b) In the case of an insurance company subject to the tax imposed by this section;

"(1) The term 'gross income' means the combined gross amount, earned during the taxable year, from investment income and from underwriting income as provided in this subdivision, computed on the basis of the underwriting and investment exhibit of the annual statement approved by the National Convention of Insurance Commissioners;

"(2) The term 'net income' means the gross income as defined in paragraph (1) of this subdivision less the deductions allowed by section 247;

"(3) The term 'investment income' means the gross amount of income earned during the taxable year from interest, dividends and rents, computed as follows:

"To all interest, dividends and rents received during the taxable year, add interest, dividends and rents due and accrued at the end of the taxable year, and deduct all interest, dividends and rents due and accrued at the end of the preceding taxable year;

"(4) The term 'underwriting income' means the premiums earned on insurance contracts during the taxable year less losses incurred and expenses incurred;

"(5) The term 'premiums earned on insurance contracts during the taxable year' means an amount computed as follows:

"From the amount of gross premiums written on insurance contracts during the taxable year, deduct return premiums and premiums paid for reinsurance. To the result so obtained add unearned premiums on outstanding business at the end of the preceding taxable year and deduct unearned premiums on outstanding business at the end of the taxable year;

"(6) The term 'losses incurred' means losses incurred during the taxable year on insurance contracts, computed as follows:

"To losses paid during the taxable year, add salvage and reinsurance recoverable outstanding at the end of the preceding taxable year, and deduct salvage and reinsurance recoverable outstanding at the end of the taxable year. To the result so obtained add all unpaid losses outstanding at the end of the taxable year and deduct unpaid losses outstanding at the end of the preceding taxable year;

"(7) The term 'expenses incurred' means all expenses shown on the annual statement approved by the National Convention of Insurance Commissioners, and shall be computed as follows:

"To all expenses paid during the taxable year add expenses unpaid at the end of the taxable year and deduct expenses unpaid at the end of the preceding taxable year. For the purpose of computing the net income subject to the tax imposed by this section there shall be deducted from expenses incurred as defined in this paragraph all expenses incurred which are not allowed as deductions by section 247."

Sections 247 and 230 (42 Stat. 263 and 252) referred to therein are as follows:

"Sec. 247. (a) That in computing the net income of an insurance company subject to the tax imposed by section 246 there shall be allowed as deductions:

"(1) All ordinary and necessary expenses incurred, as provided in paragraph (1) of subdivision (a) of section 234;

"(2) All interest as provided in paragraph (2) of subdivision (a) of section 234;

"(3) Taxes as provided in paragraph (3) of subdivision (a) of section 234;

"(4) Losses incurred;

"(5) Bad debts in the nature of agency balances and bills receivable ascertained to be worthless and charged off within the taxable year;

"(6) The amount received as dividends from corporations as provided in paragraph (6) of subdivision (a) of section 234;

"(7) The amount of interest earned during the taxable year which under paragraph (4) of subdivision (b) of section 213 is exempt from taxation under this title, and the amount of interest allowed as a credit under subdivision (a) of section 236;

"(8) A reasonable allowance, for the exhaustion, wear and tear of property, as provided in paragraph (7) of subdivision (a) of section 234;

"(9) In the case of such a domestic insurance company, the net income of which (computed without the benefit of this paragraph) is $25,000 or less, the sum of $2,000; but if the net income is more than $25,000 the tax imposed by section 246 shall not exceed the tax which would be payable if the $2,000 credit were allowed, plus the amount of the net income in excess of $25,000.

"(b) In the case of a foreign corporation the deductions allowed in this section shall be allowed to the extent provided in subdivision (b) of section 234.

"(c) Nothing in this section or in section 246 shall be construed to permit the same item to be twice deducted."

"Sec. 230. That, in lieu of the tax imposed by section 230 of the Revenue Act of 1918, there shall be levied, collected, and paid for each taxable year upon the net income of every corporation a tax at the following rates:

"(a) For the calendar year 1921, 10 per centum of the amount of the net income in excess of the credits provided in section 236; and

"(b) For each calendar year thereafter, 12½ per centum of such excess amount."

The provisions of the Revenue Act of 1924 (43 Stat. 253) are identical in principle, though somewhat different in other respects.

It is thus seen that the issue is narrowed to the question as to whether the plaintiff is an "insurance company subject to the tax imposed by section * * * 246," or is it, for the purposes of the Revenue Acts, an ordinary corporation.

What is the nature of the plaintiff's business? It was organized under article 5 of the Insurance Law of the state of New York (Laws of 1892, chapter 690, §§ 170–177), and filed its certificate of incorporation in the office of the superintendent of insurance of the state of New York on or about April 5, 1906. It has since the date of its incorporation been subject to the examination and supervision of the superintendent of insurance of the state of New York, and has filed annual reports with the superintendent of insurance of the state of New York. Its business has consisted in the insurance of titles to real estate and in the guaranteeing of real estate mortgages. In respect to its title insurance business, it may be said that plaintiff issued policies of title insurance after having examined and prepared abstracts of the titles in relation to real estate and chattels real. It is not with respect to that department of the plaintiff's business that controversy is raised, but rather as to the other functions exercised in the guaranteeing of real estate mortgages.

In conducting this mortgage guaranty business, plaintiff's practice requires an applicant for such guaranteed mortgage to apply for a first mortgage loan upon the applicant's property, and for such inspections, examinations, appraisal, and other acts as are necessary and incidental thereto. The applicant agrees to pay the plaintiff's charges for such services. Then follows in due course the preparation by the plaintiff of a bond and a mortgage to be executed by the applicant. The plaintiff pays the applicant the face value of the bond, less its charges for its services, retaining the bond and the mortgage as security for the repayment of the loan. The bond and the mortgage are then sold by the plaintiff for the face value thereof. At the same time the plaintiff delivers to the purchaser a policy of mortgage guaranty. The terms of the policy guarantee the payment of the principal of the bond at maturity, interest to be paid periodically but at a rate lower than that stipulated in the

bond, and guarantee the mortgage to be a valued first lien upon a good and marketable title in fee to the real estate in question. The plaintiff is required also to collect the interest and principal of the bond and the mortgage under the agreement, retaining as compensation for its guaranty all interest collected in excess of the rate guaranteed by the plaintiff. This excess of interest generally is one-half of 1 per cent. of the face amount of the bond. It is the practice of the plaintiff soon after the acquisition of these mortgages to sell them at an average period of within two months from acquisition.

From the agreed state of facts it appears that a substantial part of the business carried on by the plaintiff consisted of the sale of guaranteed mortgages. It is the contention of the defendant that in such circumstances, since the guaranteeing of real estate mortgages is not insurance, a corporation engaged in such business is not entitled to be classed as an insurance company for purposes of federal taxation under the provisions of sections 246 and 247 of the Revenue Act of 1921 (42 Stat. 262, 263) and Revenue Act 1924 (26 USCA § 1006 note and § 1007).

What did Congress intend? By section 230 of the Revenue Act of 1921 (42 Stat. 252) Congress imposed an income tax upon the net income of every corporation based upon its gross income "derived from any source whatever" (section 213, subd. a, 42 Stat. 238). Sections 246 and 247 make those latter sections inapplicable to insurance companies. The exception, therefore, must be strictly construed. United States v. Dickson, 15 Pet. 141, 10 L. Ed. 689; Bank of Commerce v. Tennessee, 161 U. S. 134, 16 S. Ct. 456, 40 L. Ed. 645.

The defendant argues in brief that the income of an ordinary insurance company derived from its business of making and selling insurance contracts consists of its premium income (resulting from the issuance of its policies), and, secondly, its investment income (derived from investment of its capital, surplus, and undivided profits). These two classes of income are indeed the "gross income" of an insurance company as defined in section 246.

If now the provisions of section 247 are analyzed, it is found that in computing the "net income of an insurance company subject to the tax imposed by section 246" only such deductions are permitted as represent losses and expenses incurred in the production of the gross income defined in section 246. It would seem, therefore, that Congress did not intend by sections 246 and 247 to exempt from taxation any income not classified as the income of an insurance company under said section 246. The inference drawn by the government then is that, since a substantial part of the income of the plaintiff is neither premium income nor investment income, it is not that kind of income which Congress has made characteristic or typical or indeed the income of an insurance company. The government's syllogism might be stated thus:

"All insurance companies (under the Revenue Acts) are those, the sole income of which consists of premium income and investment income.

"Plaintiff company is not one, the sole income of which consists of premium and investment income.

"Therefore, the plaintiff is not an insurance company such as Congress intended to relieve from the payment of the capital stock tax."

Reasonableness is given to this conclusion, the defendant argues, because Congress did not intend that any income not classified as the income of an insurance company (i. e., premium income and investment income) should be exempt from taxation.

A similar situation as that involved herein is reported in Louisville Title Co. v. Lucas (D. C.) 27 F. (2d) 413, 417. In that case the plaintiff was engaged in the dual business of insuring titles to real estate and of selling and guaranteeing mortgages. It was said:

"Congress was undoubtedly undertaking, in section 246, to provide for the taxation of all of the income of insurance companies subject to its provisions. In so doing it provided for the taxation of only that income ordinarily understood to be enjoyed by insurance companies, viz. premium income and incidental income, flowing from the investment of its capital and surplus. If it had been the intention of Congress to give those companies which were conducting not only an insurance business, but also some separate and distinct business, the benefit of section 246, undoubtedly provision would have been made for reporting and taxing the income derived from such separate and distinct business. To assume otherwise would be to impute to Congress a deliberate intention to exempt the income of some businesses from taxation altogether, simply because

they were conducted by a corporation also engaged in the insurance business.

"I think, therefore, we must conclude that if an insurance company, in addition to its insurance business, conducts a separate and distinct business, from which it obtains a substantial income, it is not subject to taxation under section 246, nor exempt from taxation under section 1000."

The court then stated that the mortgage sale department or business of the Louisville Title Company was wholly distinct from its title insurance business, and added:

"Of course, a guaranty of the payment of the obligation of another, according to the terms thereof, is not an insurance contract any more than is the indorsement of a negotiable instrument an insurance contract."

A "guaranty" is defined to be a promise to answer for the payment of some debt or the performance of some duty in case of the failure of another person, who in the first instance was liable for such payment or performance. 4 Words and Phrases, First Series, 3179, and cases therein cited.

In this respect it differs from insurance, which is a contract involving a direct, not an indirect, obligation. A contract of insurance is a personal contract of indemnity between the insured and the underwriter. The contract of insurance does not attach itself to the thing insured, nor go with it when it is transferred. Northern Trust Co. v. Snyder (C. C. A.) 76 F. 34.

Plaintiff's contract of guaranty certainly falls within the former class and not the latter. It obligates the plaintiff to pay the full amount of the principal and interest upon default of the mortgagor, and not merely to indemnify the holder of the mortgage to the extent of a loss that might be sustained by him. It follows that such of plaintiff's income as is derived from its business of guaranteeing real estate mortgages should not be exempt from taxation, and yet it would be if plaintiff were held to be an insurance company within the intent and meaning of the Revenue Acts in question, for such income is neither investment income nor underwriting income as defined in section 246.

It may be said in conclusion that the mere fact that the plaintiff has a charter from the state of New York, which permits it to do an insurance business, does not make it an insurance company within the meaning of section 246. Louisville Title Co. v. Lucas (D. C.) 27 F.(2d) 413.

The findings of fact will be the stipulated facts.

The motion for judgment on behalf of the defendant is granted.