NORFOLK NATIONAL BANK OF COMMERCE & TRUSTS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

NORFOLK NATIONAL BANK OF COMMERCE & TRUSTS, SUCCESSOR TO THE NORFOLK NATIONAL BANK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 48367, 48368.   Promulgated October 4, 1932.

*Louis E. Spiegler, Esq., N. Norman Mayer, Esq.,* and *J. A. D. Parrish, C. P. A.,* for the petitioner.

*E. L. Corbin, Esq.,* for the respondent.

### OPINION.

STERNHAGEN: In these proceedings the petitioner assails the respondent's determination of deficiencies in income tax of $2,119.35 for 1925 in Docket No. 48367, and $964.66 for 1924 and $2,502.39 for 1925 in Docket No. 48368.   The taxpayers, in their returns for those years, had reported the receipt of certain specified amounts as interest on obligations of a state, territory, or political subdivision thereof which they regarded as not included in statutory gross income, but as exempt under sections 233 (a) and 213 (b) (4) of the Revenue Acts of 1924 and 1926, set forth in the margin.[1]   The Com-

---

[1] SEC. 233. (a) In the case of a corporation subject to the tax imposed by section 230 the term " gross income " means the gross income as defined in sections 213 and 217, except that mutual marine insurance companies shall include in gross income the gross premiums collected and received by them less amounts paid .for reinsurance.

SEC. 213. For the purposes of this title, except as otherwise provided in section 233—
\* \* \* \* \* \* \*
(b) The term " gross income " does not include the following items, which shall be exempt from taxation, under this title:
\* \* \* \* \* \* \*
(4) Interest upon (A) the obligations of a State, Territory, or any political subdivision thereof, or the District of Columbia; or (B) securities issued under the provisions of the

missioner determined that the amounts were interest on the obligations of private corporations and therefore not exempt, and accordingly included them in the taxpayers' statutory gross income. The issue to be determined is whether the obligations held by the taxpayers upon which the interest was received were within the exempt provision of the statutes.

The case was presented upon an agreed statement of facts, which included the several ordinances, resolutions and contracts which are the background of the interest in question. Since none of the facts are in dispute, and there is no other evidence, there is no occasion to burden this report with specific findings much of which would be quotations of documentary provisions. The significant facts can be summarized. In the "Robertson Act" of March 15, 1920, amended March 21, 1924, the Commonwealth of Virginia provided that the Highway Commission might borrow money for roadbuilding from private citizens without interest. The city of Norfolk and the County of Isle of Wight, in order to encourage the lending of private capital for such highway improvement, resolved to pay interest at 6 per cent upon loans made to the Highway Commission for certain roads in their vicinity. The Ridge Route Corporation was organized and under an agreement with the Highway Commission and another with the city of Norfolk loaned $260,000 at 6 per cent, the principal to be paid by the Highway Commission and the interest by the city. Similarly the Peninsula Corporation loaned $100,000. In Isle of Wight County, an organized group of individual citizens similarly loaned $74,000. These contracts were then assigned to the Norfolk Trust Company as trustee, and that company collected the interest from the city and the county, and issued its several checks, which were among others received by the present petitioner.

The precise legal relation of the petitioner to these loans and payments is in confusion in the stipulation. While the several stipulated contracts clearly indicate that the loans were made to the Highway Commission by the two corporations above named and the group of citizens, of whom the petitioner was not one, it is also expressly stipulated that in each of the three instances a group of banks including the petitioner advanced the said amounts " to the State High-

---

Federal Farm Loan Act, or under the provisions of such Act as amended; or (C) the obligations of the United States or its possessions. Every person owning any of the obligations or securities enumerated in clause (A), (B), or (C) shall, in the return required by this title, submit a statement showing the number and amount of such obligations and securities owned by him and the income received therefrom, in such form and with such information as the Commissioner may require. In the case of obligations of the United States issued after September 1, 1917 (other than postal savings certificates of deposit), the interest shall be exempt only if and to the extent provided in the respective Acts authorizing the issue thereof as amended and supplemented, and shall be excluded from gross income only if and to the extent it is wholly exempt to the taxpayer from income taxes.

way Commission." In this the stipulation is so manifestly inconsistent that both statements can not be accepted as fact, and the categorical statement must be read in the light of the documents surrounding the transactions. It would be too incongruous for belief that the petitioner and other banks should have advanced the money directly to the Highway Commission, while at the same time corporations and groups were especially organized and all the legal rights and obligations involved in the loan should be fixed not with the lenders, but with these others. A simple loan by A to B, with C's promise to pay interest to A, would not necessitate the intervention of X and the assignment to Y trustee. The use of a devious device must be assumed to rest on substantial reason and not on utter futility. It is explained by counsel (although not in the evidence) as a method of avoiding the inconvenience to the Highway Commission of dealing separately with each individual lender. Thus, given substance, the corporations and groups can not at the same time be ignored as a mere form. It was only because before the law they stood as separate entities that they were organized and given a function in the arrangement. The conclusion is inescapable that the contracts correctly testify that the loans were in law made by the corporations and the group, irrespective of the means whereby they acquired the money to lend, and that the promise of the Highway Commission to repay the principal and of the political subdivisions to pay the interest were made to them and not to the petitioners.

Looking further into the documents, we find that the assignments made to the trustee indicate that the corporations must have issued notes or bonds, for the obligation of the trustee to distribute inures to the holders of these bonds, there being no reference whatever to any obligation of the trustee to lenders to the Highway Commission. This obviously is because the trustee itself stood in the shoes of the original lender as well as the obligor on the bonds or notes. Thus, whatever obligations there were of the Commonwealth, the county, and the city ran in favor first of the corporations and group and then to their assignee, the trustee. To the Commonwealth and its subdivisions these petitioners were strangers, even if we read the evidence as indicating that they in the first instance provided the funds or credit which ultimately reached the Highway Commission.

In the absence of evidence, we perhaps ought not to surmise the factual steps of the arrangement; but should hold the omission against the petitioner who has the burden. But it seems plain that for reasons of their own, the petitioners dealt not with the Commonwealth and its subdivisions, but with the corporations and the group, for which in turn the trustee was substituted. This is as close as

the petitioners apparently ever got to the Commonwealth or its subdivisions.

The effect of petitioner's argument is the one so frequently presented in tax cases, namely, that the intervening corporations and group were mere forms, that the substance of the transaction was a loan by petitioners themselves to the Commonwealth, with correlative promises to pay principal and interest to them, which amounted to the obligations exempted by the statute, and that substance should control over form. There is, however, no stronger reason here for treating the legal facts as fictitious than in numerous other cases where the argument has been rejected, with tax results sometimes one way and sometimes another. *United States* v. *Phellis*, 257 U. S. 156; *Chandler Shipbuilding Co.*, 22 B. T. A. 5; *E. H. Nielsen Co.*, 26 B. T. A. 223.

That Congress intended this result is implicit in the provision of section 213 (b) (4) that "every person owning any of the obligations or securities enumerated in clause (A), (B) or (C) shall, in the return required by this title, submit a statement showing the number and amount of such obligations and securities owned by him and the income received therefrom * * *." This seems to us clearly to confine the exemption to the interest on such obligations as on their face can be listed in accordance with this requirement as those of state or political subdivision. It must perforce exclude obligations of private obligors, even although such obligations are expressly or impliedly payable from funds derived from the state or municipality. Furthermore, the provision being for tax exemption, it may not be loosely applied to income not clearly within its terms, *Bank of Commerce* v. *Tennessee*, 161 U. S. 134, 146; *Riverdale Co-operative Creamery Assn.* v. *Commissioner*, 48 Fed. (2d) 711.

Petitioner seeks to bring the situation within the constitutional argument that the Federal Government may not by taxation burden or interfere with the exercise by a state of its governmental functions. But there is nothing in the record to establish such a burden or interference, and it may not be assumed, *Willcuts* v. *Bunn*, 282 U. S. 216. The application of the doctrine goes no further than the holders of the state or municipal obligations and stops short of the holders of private obligations even although they be economically related to the state's operations. The exemption, if such there be, may be available to the corporations and the group, and may in turn be available to the Trust Company of Norfolk, trustee, each as holder of the state and municipal obligations. It does not, however, reach the petitioner.

*Judgment will be entered for the respondent.*