JOHN F. BEGGY AND ROSE A. BEGGY, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 50777. Filed January 27, 1955.

*W. Denning Stewart, Esq.*, for the petitioners.
*Albert J. O'Connor, Esq.*, for the respondent.

OPINION.

MURDOCK, *Judge:* The Commissioner determined a deficiency of $5,744.30 in income tax of the petitioners for 1950. The only issue for decision is whether $26,368.48 paid by Mine Safety Appliances Company to John F. Beggy in 1950 represented a gift within the meaning of section 22 (b) (3) of the Internal Revenue Code and therefore was excludible from his income. The parties have filed a stipulation of facts with exhibits, all of which are adopted as findings of fact.

The petitioners are husband and wife and they filed a joint income tax return for 1950 with the collector of internal revenue for the twenty-third district of Pennsylvania.

John F. Beggy, hereafter called the petitioner, was an officer and employee of Mine Safety Appliances Company for 31 years prior to May 19, 1948. He submitted his resignation to and had it accepted by the board of directors of the corporation at its meeting on May 19, 1948. The minutes of that meeting show the following after the resignation of the petitioner had been accepted:

The matter of any future compensation to be paid Mr. John F. Beggy, former Vice President and Secretary of the company, was discussed and upon motion of Mr. J. T. Ryan, Jr., seconded by Mr. Stringfellow, Messrs. Seifert, Wallerstedt and Zacharias were appointed a committee to take up this matter and present a recommendation to the Board of Directors.

The committee made a report to the board dated July 20, 1948, reciting that it was appointed

to consummate arrangements with John F. Beggy who recently resigned his position as Vice President, Secretary and Assistant Treasurer of the corporation.

Your committee feels that it is highly desirable that Mr. Beggy be retained as an employee of the company for a period of at least a year and a half in order that, during such period, and in so far as his health permits, he be available to its officers and directors for necessary conferences, consultations, and participation in the many complicated situations with which he is peculiarly familiar. The following proposal has been discussed with Mr. Beggy and is acceptable to him and your committee therefore recommends that Mr. Beggy be continued as an employee of the company, without title, until January 31, 1950, his compensation during said period to be as follows:

July 1–December 31, 1948, at the rate of $3,000 per month;
January 1–December 31, 1949, at the rate of $2,500.00 per month; and
For the month of January, 1950, the sum of $2,000.

The petitioner also continued to serve the corporation as a director until April 19, 1950.

The corporation created a pension plan for the benefit of certain of its employees, including the petitioner, effective as of December 20, 1944. A bank was the trustee under the plan. The plan provided that during the first 5 years no vested rights could inure to the benefit of otherwise qualified participants. Life insurance policies with retirement income benefits were taken out on the life of the petitioner

as a part of the plan. The premiums were paid by the trustee from funds contributed by the corporation. The plan was amended on May 23, 1945, and again on December 19, 1949, 1 day prior to the expiration of the 5-year vesting period. A new bank was named as trustee and in accordance with the amendment the old trustee obtained the loan value of the life insurance policies and paid them to the new trustee.

Any right, title, or interest which the petitioner may have had in the pension plan never vested but was forfeited in accordance with the provisions of the plan both by reason of his resignation as an employee of the corporation and by reason of the amendment of the plan prior to the expiration of the 5-year vested period.

The corporation, on or about February 1, 1950, paid $26,368.48 ($22,413.21 after income tax withheld) to the petitioner from its general corporate funds. That amount was paid "voluntarily and without any legal obligation to do so." The payment was authorized at a meeting of the board of directors held January 17, 1950. The minutes of that meeting include a statement of the chairman that at the time of the resignation of the petitioner "the officers of the company had an understanding with him that he would receive an amount equal to the cash surrender value of the two insurance policies issued on his life computed as of the end of the fifth year of the pension plan which were a part of said plan." He further stated that a computation showed the total cash surrender value of the two policies as of the end of the 5-year period to be $26,368.48 and he believed it would be advisable to pass a resolution to authorize the officers of the corporation to pay the petitioner that amount in complete settlement of the understanding had with him at the time of his resignation whereupon the following resolution was adopted:

RESOLVED, That this Company pay to John Beggy the sum of $26,368.48 in full payment of any and all claims which he may have in connection with said Pension Plan, it being understood that the proper amounts of Federal taxes and social security payments be withheld and paid direct to the proper authorities.

The president wrote a letter to the petitioner dated February 1, 1950, enclosing a check for the final salary payment in accordance with the arrangement for salary to the end of January 1950, and also enclosing a check for $22,413.21 in accordance with the following paragraph in the letter:

There is also enclosed another check in the amount of $22,413.21 after withholding tax, the original gross earnings being $26,368.48. This gross amount is arrived at in connection with the cash values of the insurance policies with the New England Mutual Life Insurance Company. On Policy No. 576,106 the cash value at the end of the fifth year was $13,405.88. On Policy No. 1,254,796 the cash value at the end of the sixth year was $12,962.60, the sum of these two being the amount of gross earnings as shown on the statement accompanying

the check. This is in accord with the arrangements made in your discussion with Mr. Wallerstedt and I trust that you will find the total of these transactions in line with the arrangements made with the Board of Directors' committee.

The corporation treated the payment of $26,368.48 as a general and administrative expense on its books by debiting the amount to an account entitled "Executive Administrative Division—Pensions" and crediting an account entitled "Payroll—Office." It claimed the payment as a deduction from gross income under "Salaries and Wages" on its corporate income tax return for 1950.

The petitioners in their return for 1950 reported the $26,368.48 as a long-term capital gain. The Commissioner, in determining the deficiency, eliminated the long-term capital gain and included the entire amount as compensation.

The following facts are found from the testimony:

The corporation felt a moral obligation to pay the petitioner the equivalent of the cash surrender value of the policies on his life because he had resigned prior to the end of the five-year vesting period. It was advised by legal counsel to withhold the tax, to handle the payment through the payroll account, and to deduct the amount as compensation for services. The deduction has been allowed by the Commissioner of Internal Revenue.

The petitioner remembers no conversation about the insurance prior to or at the time of his resignation but remembers that after the Board meeting in November 1949, at which time the change in the pension plan was first discussed, he was told by Wallerstedt that he need not be concerned about the change and he replied that he was not concerned about it. He never complained about the withholding of income tax on the payment to him because he believed that the company was under no obligation to pay him anything and he could only accept what was offered to him.

The petitioners assigned several errors but only argue in their briefs that the money received was a gift. They say that the petitioner was not an employee on February 1, 1950, when the money was paid or on January 17, 1950, when the payment was authorized by the board; he had been paid in full for all of his services as an employee; and the payment was not in consideration of past services. They claim that the accounting on the books of the corporation was improper and was done only as a precaution or to justify a deduction for the corporation on its income tax return. They argue that the payment of a gift was legal under the laws of Pennsylvania. These and all of the other arguments of the petitioner have been carefully considered.

It seems obvious from the consistent acts of the corporation that it felt a moral obligation towards this man who had been its employee for so long and decided that he should have this payment in lieu of and measured by the benefits which he might have received under the pension plan. That plan had been adopted as a means of providing additional compensation to certain employees, including the petitioner, for services to the corporation. The corporation did not have in mind

740

the making of a gift but felt that it owed him the amount although not legally required to pay it. It is well established that compensation may be paid voluntarily and without legal obligation and may be for past services. *Willkie* v. *Commissioner*, 127 F. 2d 953, certiorari denied 317 U. S. 659; *Carragan* v. *Commissioner*, 197 F. 2d 246; *Poorman* v. *Commissioner*, 131 F. 2d 946, 949; *Nickelsburg* v. *Commissioner*, 154 F. 2d 70, 71. The Court has reached the conclusion on the entire evidence that the payment represented additional compensation for past services and was ordinary income to the petitioner when received.

*Decision will be entered for the respondent.*