**Carol M. HERBERT and Henry W. Herbert, Plaintiffs–Appellees,**

v.

**UNITED STATES of America, Defendant–Appellant.**

**No. 389, Docket 87–6194.**

United States Court of Appeals, Second Circuit.

Argued Nov. 30, 1987.

Decided June 2, 1988.

As Amended June 24, 1988.

Edward T. Ferguson, III, Asst. U.S. Atty., New York City (Rudolph W. Giuliani, U.S. Atty. for S.D.N.Y., Steven E. Obus, Jordan Stanzler, Asst. U.S. Attys., New York City, of counsel), for defendant-appellant.

Henry W. Herbert, New York City, pro se and for plaintiff-appellee Carol M. Herbert.

Before PIERCE, MINER, and DAVIS,* Circuit Judges.

PIERCE, Circuit Judge:

The United States of America appeals from a judgment of the United States District Court for the Southern District of New York, Charles L. Brieant, *Ch.J.*, denying appellant's motion for summary judgment, granting appellees' cross-motion for summary judgment, and awarding appellees the sum of $14,876.68 in tax refunds. The government contends on appeal that neither the statutory language of 45 U.S.C. § 797d(b) (1982) nor the relevant legislative history supports the district court's conclusion that the lump sum separation allowance paid to appellee Henry Herbert is exempt from federal income taxation. We agree with the government.

---

* Honorable Oscar H. Davis, Circuit Judge, United States Court of Appeals for the Federal Circuit, sitting by designation. Judge Davis heard arguments in this case and voted to reverse, but because of illness, he has been unable to review this opinion. Accordingly, this appeal is being decided by the other two judges pursuant to Second Circuit Rule § 0.14(b).

## BACKGROUND

The facts of this case are set forth in full in the district court's opinion, reported at 662 F.Supp. 573 (S.D.N.Y.1987). We relate only so much of the facts as is necessary to discuss the issue presented on appeal. Appellees Henry W. and Carol M. Herbert were cosignatories of a joint tax return filed in 1982. Henry W. Herbert ("Herbert") was employed by the Consolidated Rail Corporation ("Conrail") and its predecessor railroads from 1957 through 1978. In January 1979, Herbert was "deprived of employment" within the meaning of Title V of the Regional Rail Reorganization Act of 1973. *See* Pub.L. No. 93–236, § 501(6), 87 Stat. 985, 1012, *reprinted in* 1973 U.S. Code Cong. & Admin. News 1102, 1136–46. Under the job and wage protection provisions of Title V, Herbert thereby became entitled to monthly payments until the age of 65. *See id.* §§ 501(3), 505, 87 Stat. 1012, 1015, *reprinted in* 1973 U.S.Code Cong. & Admin.News at 1136, 1139–45. Title V was subsequently replaced by Title VII of the Northeast Rail Service Act of 1981 ("NERSA"). *See* Pub.L. No. 97–35, Title XI, §§ 1143, 1144(a)(1), 95 Stat. 661–69 (codified as amended at 45 U.S.C. § 797 et seq. (1982 & Supp. IV 1986)). The United States Railroad Retirement Board ("Board"), which administers the employee protection provisions of Title VII, *see* 20 C.F.R. § 395.4 (1987), offered two options to former Conrail employees who were eligible for benefits under the old Title V: (1) resignation of seniority and acceptance of a lump sum separation allowance; or (2) furlough status with periodic benefit payments. *See id.* § 395.3(a). Herbert chose to receive a lump sum separation allowance of $20,000, which was approved by the Board in June 1982. Herbert subsequently received a check for $19,275.31, which represented the authorized separation allowance of $20,000, less deductions for certain health coverage premiums which had been paid by the Board on Herbert's behalf. No taxes were withheld and the Herberts did not declare the payment as income on their 1982 tax return.

In December 1983, the Internal Revenue Service ("IRS") informed the Board that Title VII employee benefit payments, excluding contributions for health coverage, were considered wages and were taxable as gross income. In July 1985, the IRS notified the Herberts that the full $20,000 was taxable and that they owed the IRS the sum of $9,471 in federal income taxes, plus interest in the amount of $2,974.60, for a total of $12,445.60. In October 1985, the Herberts paid the deficiency under protest and filed a claim for a refund. In April 1986, the IRS assessed additional interest in the amount of $307.10, which the Herberts have paid.

In July 1986, the appellees filed suit in district court seeking a tax refund of $12,752.70. They claimed that 45 U.S.C. § 797d(b) specifically exempts Herbert's separation allowance from federal income tax. In June 1987, the district court denied the government's motion for summary judgment and granted appellees' cross-motion for summary judgment. The district court concluded that: (1) the plain language of 45 U.S.C. § 797d(b) unambiguously exempts the lump sum payment to Herbert from gross income; (2) the exemption is consistent with a broad reading of the spirit and purposes of NERSA; and (3) it is up to Congress to correct the statute if the plain meaning was not intended. Consequently, the district court awarded the appellees the sum of $14,876.68 in tax refunds and accrued interest. The government appeals with respect to the $19,275.31 received by Herbert and concedes on appeal that the $724.69 that was deducted by the Board for health and welfare premiums was not subject to federal income tax.

## DISCUSSION

This appeal presents a question of statutory construction: whether 45 U.S.C. § 797d(b) exempts from federal income tax a lump sum separation allowance paid pursuant to 45 U.S.C. § 797. The government contends that neither the language of § 797d(b) nor the relevant legislative history supports the district court's conclusion that Congress intended to exempt Herbert's separation allowance from taxable

income. We turn first to the language of the statute since, " '[a]bsent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive.' " *Bread Political Action Comm. v. Federal Election Comm'n*, 455 U.S. 577, 580–81, 102 S.Ct. 1235, 1237–38, 71 L.Ed.2d 432 (1982) (quoting *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)).

1. *45 U.S.C. § 797d(b)*

In relevant part, 45 U.S.C. § 797d(b) provides:

Any benefits received by an employee under an agreement entered into pursuant to section 797 of this title and any termination allowance received under section 797a of this title *shall be considered compensation solely for purposes of—*

(1) the Railroad Retirement Act of 1974 (45 U.S.C. 231 et seq.); and

(2) determining the compensation received by such employee in any base year under the Railroad Unemployment Insurance Act (45 U.S.C. 351 et seq.).

(emphasis added). The district court concluded that the phrase "shall be considered compensation solely for purposes of" specifically exempts Herbert's separation allowance from federal income taxation. Observing that the plain meaning of the word "solely" means "to the exclusion of all else" and that the word "compensation ... readily brings to mind visions of the federal income tax consequences" of the separation allowance, the court concluded that this language was clear in demonstrating that Congress intended the separation allowance to be nontaxable. Moreover, the court found that, whereas Congress specifically included "compensation" as taxable income with respect to annuity payments under NERSA, *see* 45 U.S.C. §§ 231(h)(7), (8) (1982 & Supp. III 1985), they failed to do so with respect to separation allowances under NERSA; therefore, the court concluded that Congress's silence with respect to separation allowances supported the in-

terpretation that Congress intended such payments to be exempt from tax. The court noted that its conclusion was consistent with *Sutherland v. United States*, 664 F.Supp. 207 (W.D.Pa.1986), in which the court found that "[t]he relevant wording of § 797d(b) ... does not ... mandate that these payments be treated as taxable income," *id.* at 212.

Though Congress did not specifically include the lump sum allowance as "income" in NERSA, Congress need not specifically include *any* payment as income for it to be subject to taxation. Rather, the Internal Revenue Code defines gross income broadly as *"all* income from whatever source derived." 26 U.S.C. § 61(a) (1982) (emphasis added). The Supreme Court has consistently given this definition of gross income a liberal construction "in recognition of the intention of Congress to tax all gains *except those specifically exempted." Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426, 430, 75 S.Ct. 473, 476, 99 L.Ed. 483 (1955) (emphasis added); *see also United States v. Stewart*, 311 U.S. 60, 71, 61 S.Ct. 102, 109, 85 L.Ed. 40 (1940) ("those who seek an exemption from a tax must rest it on more than a doubt or ambiguity"); *United States Trust Co. v. Helvering*, 307 U.S. 57, 60, 59 S.Ct. 692, 693, 83 L.Ed. 1104 (1939) ("Exemptions from taxation do not rest upon implication."); *Bank of Commerce v. Tennessee ex rel. Memphis*, 163 U.S. 416, 423, 16 S.Ct. 1113, 1116, 41 L.Ed. 211 (1896) ("[T]he claim for exemption must rest upon language in regard to which there can be no doubt as to its meaning, and ... the exemption must be granted in terms too plain to be mistaken...."). The mere fact that Congress specifically included certain payments as "income" does not mean that all other payments *not* specifically included are therefore *not* "income". Rather, Herbert's separation allowance is taxable as gross income unless Congress has enacted a specific exemption evidencing "clear congressional intent" to the contrary. *Glenshaw*, 348 U.S. at 431, 75 S.Ct. at 477.

We fail to find in the language of § 797d(b) any specific exemption of Her-

bert's separation allowance from federal income taxation. Though the plain language of § 797d(b) limits the circumstances in which the allowance shall be considered "compensation", the term "compensation" is not synonymous with the term "income". Rather, in tax statutes, the term "compensation" is often used to describe a *kind* of income, and is not used as a synonym for "income" itself. *See, e.g.,* 26 U.S.C. § 219(b)(1)(B) (1982) (retirement savings statute in which reference is made to a deduction for the amount of *"compensation* includible in the individual's *gross income"* (emphasis added)); 26 U.S.C. § 3201(a) (1982 & Supp. III 1985) (reference in the Railroad Retirement Tax Act to the tax "imposed on the *income"* of an employee in an amount equal to the "percentage of the *compensation* received" by the employee (emphasis added)). Various revenue rulings clearly treat the issue of whether certain benefits constitute "income" as different from the issue of whether such benefits constitute "compensation". In 1959, for instance, the IRS ruled that a lump sum payment to a railroad employee constituted ordinary income in the year of receipt, but did not constitute compensation for services rendered for purposes of the Railroad Retirement Act and income tax withholding. *See* Rev.Rul. 59–227, 1959–2 C.B. 13, 14; *see also* Rev.Rul. 58–301, 1958–1 C.B. 23. Later, in 1975, the IRS reversed itself on the compensation issue and ruled that such payments constituted "compensation" for purposes of the Railroad Retirement Act and constituted "wages" for income tax withholding purposes. *See* Rev.Rul. 75–44, 1975–1 C.B. 15, 15–16; *see also* Rev.Rul. 65–251, 1965–2 C.B. 395. It is evident that, in tax usage, "compensation" is not synonymous with "income".

Moreover, in other instances in which Congress has intended to exempt certain benefits from taxation, it has done so in unambiguous terms. For instance, with regard to the tax treatment of railroad unemployment benefits, Congress stated specifically that "no benefits shall be assignable or be *subject to any tax* ... under any circumstances whatsoever." 45 U.S.C. § 352(e) (1982) (emphasis added). Similarly, with respect to the tax treatment of railroad retirement annuities, Congress provided that "no annuity or supplemental annuity shall be assignable or be *subject to any tax* ... under any circumstance whatsoever," except that the "amount of any supplemental annuity paid to an individual under section 231a(b) of this title [shall not be excluded] from *income taxable pursuant to the Federal income tax provisions of the Internal Revenue Code of 1954."* 45 U.S.C. § 231m (1982 & Supp. III 1985) (emphasis added). With respect to transfers or conveyances of rail property pursuant to NERSA, Congress provided that such transfers or conveyances "shall be exempt from any *taxes,* imposts, or levies now or hereby imposed, by the United States or by any State or any political subdivision of a State," but that this exemption "shall not apply to *Federal income tax laws."* 45 U.S.C. § 1106(a) (1982) (emphasis added).

In reviewing § 797d(b) for specific language of exemption, we find no reference to either "tax" or "income" to indicate that the section was intended to govern the tax consequences of the separation allowance provided for in § 797. At best, the term "compensation" might be an ambiguous reference to "income". However, in light of the broad interpretation of the term "gross income", and *Glenshaw's* insistence that an exemption must be specific and provide evidence of "clear congressional intent," an ambiguous reference is not sufficient to create an exemption from gross income.

### 2. *Legislative History*

In reviewing the legislative history of Title VII, the district court found no express reference by Congress to the tax consequences of payments made pursuant to § 797. Despite Congress's silence in this regard, the district court nonetheless found that an exemption for such payments was consistent with a "broader reading of the spirit and purposes of Title VII" since Title VII was intended not only to fund the employee protection system at less cost,

but also to continue to protect employees who are "deprived of employment."

We cannot agree with the district court that the legislative history of Title VII supports its conclusion that Congress intended to exempt § 797 separation allowances from federal income taxation. As the district court concedes, the legislative history provides *no* evidence of congressional intent to exempt such payments from federal income tax. Rather, the legislative history would appear to demonstrate that Congress gave no thought to the tax treatment of these allowances. Further, as previously discussed, § 797d(b)'s reference to "compensation" cannot be construed as a clear and specific exemption of the separation allowance from taxable "income". Consequently, while we may agree with the district court that taxation of the employee's already reduced benefits under Title VII seems contrary to Title VII's goal of employee protection, we are constrained by *Glenshaw*'s requirements of a "specific exemption" and "clear congressional intent" to conclude that § 797d(b) does not exempt the allowance from federal income taxation. We agree with the district court that if Congress intended a meaning other than that which emerges from the face of the statute and its legislative history, then Congress itself may act to correct the statute.

In light of the government's concession that the $724.59 paid on behalf of appellees for health and welfare premiums was not taxable income, we affirm so much of the judgment below as pertains to that amount. In all other respects, however, we reverse and remand with instructions to dismiss the complaint.