Frank J. SLATTERY, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 48–88T.

United States Claims Court.

Dec. 23, 1988.

Frank J. Slattery, Indianapolis, Ind., pro se.

William K. Drew, Washington, D.C., with whom were Asst. Atty. Gen. William S. Rose and Mildred L. Seidman, Washington, D.C., for defendant.

## OPINION

BRUGGINK, Judge.

The issue raised in this action is whether a lump sum termination benefit received by plaintiff is to be included in his gross income. Defendant has moved for summary judgment. For the reasons set out below, the motion is due to be granted.

## BACKGROUND [1]

In 1973 Congress enacted the Regional Rail Reorganization Act ("3R Act"), Pub.L. No. 93–236, 87 Stat. 985, establishing Conrail to create a viable economic entity to replace a number of bankrupt rail carrier services in the northeast and midwest. In so doing it recognized that the envisioned reorganization could result in employee displacements. Title V of the act sought to minimize these effects by including a number of employee protection benefits for the estimated 4,600 workers who would be affected by the restructuring. Among those provisions were certain job and wage protection benefits. Although the record does not reflect precisely when, the taxpayer was apparently "deprived of employment" within the meaning of the 3R Act and was eligible for those benefits. Subsequently, Congress determined that the 3R Act failed to meet its objective of creating a self-sustaining railroad in the Northeast and replaced Title V with Title VII by enacting the Northeast Rail Service Act of 1981 ("NERSA"), Pub.L. No. 97–35, 95 Stat. 643. One of the purposes of that act was to make Conrail more attractive to private investors by relieving it of the obligation of some employee protection benefits. Title VII entitled persons such as taxpayer to certain lump-sum termination benefits. In 1982, plaintiff received a lump-sum termination benefit of $20,000 in exchange for the complete resignation of his seniority status. It is that payment which is the subject of this dispute.

On April 15, 1983 plaintiff filed a federal income tax return for the 1982 tax year. Based on his understanding of the tax consequences of the lump-sum payment, he failed to report the $20,000 as income and estimated his tax liability for that year as $0.00. This was based on his interpretation of the following language found in 45 U.S. C. § 797d(b) (1982):

[A]ny termination allowance received under section 797a of this title [section 702 of the Act] shall be considered compensation solely for purposes of—

(1) the Railroad Retirement Act of 1974 (45 U.S.C. 231 et seq.); and

(2) determining the compensation received by such employee in any base year under the Railroad Unemployment Insurance Act (45 U.S.C. 351 et seq.).

In March of 1985, the Internal Revenue Service ("IRS") notified plaintiff that the lump-sum payment he received under Title VII was taxable income and that an adjustment to his 1982 return was in order. Plaintiff in turn informed the IRS that in response to his repeated inquiries as to the character of such payments, authorities at the United States Railroad Retirement Board,[2] the regional offices of the IRS, and Conrail had indicated that the lump-sum payment had not been determined to be taxable income. Nevertheless, in November of 1985 plaintiff paid, under protest, $3,946 as "alleged back taxes." In February 1986 an IRS audit determined that plaintiff owed an additional $2297.24, of which $893.07 represented a negligence penalty, and $1404.17 an interest assessment. In September of that year plaintiff tendered the remaining amount due. In October the IRS refunded $952.74 to the plaintiff as an abatement of the penalty assessments.[3] Thus, only the tax and the interest thereon are at issue.

---

1. There is no dispute as to the relevant facts, which are drawn from the complaint and supporting materials submitted as attachments in response to the pending motion and from the defendant's uncontested Proposed Findings of Uncontroverted Fact.

2. The entity responsible for administering Title VII. See 20 C.F.R. § 395.1 (1988).

3. Plaintiff submitted a check in the amount of $2,429.07. This represented the February deficiency as well as a subsequent interest assessment levied in September in the amount of

On June 1, 1987 plaintiff filed an amended return and claimed entitlement to a tax refund in the amount of $5,422.33. When that claim was denied, Mr. Slattery, acting *pro se*, filed his complaint in this court. He contends that the lump-sum termination payment of $20,000 should not be included in gross income. In making this claim, he asks that this court not follow precedent in other courts unfavorable to plaintiff's position. *See Herbert v. United States*, 850 F.2d 32 (2d Cir.1988); *Martin v. Commissioner*, 90 T.C. 1078 (1988). For the reasons set forth below, the court rejects plaintiff's argument.

## DISCUSSION

The single question presented is whether the Title VII termination benefit at issue should be included in taxpayer's gross income for federal income tax purposes. In construing section 797d(b), several well-established principles of tax law guide the court. The first is that when Congress adopted Section 61 of the Internal Revenue Code ("gross income means all income from whatever source derived"),[4] it intended to exert "the full measure of its taxing power." *HCSC–Laundry v. United States*, 450 U.S. 1, 5, 101 S.Ct. 836, 838, 67 L.Ed.2d 1 (1987) (quoting *Commissioner v. Kowalski*, 434 U.S. 77, 82, 98 S.Ct. 315, 318, 54 L.Ed.2d 252 (1977); *Helvering v. Clifford*, 309 U.S. 331, 334, 60 S.Ct. 554, 556, 84 L.Ed. 788 (1940)); *Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426, 429, 75 S.Ct. 473, 476, 99 L.Ed. 483 (1955); *accord Helvering v. Midland Mutual Life Ins. Co.*, 300 U.S. 216, 223, 57 S.Ct. 423, 425, 81 L.Ed. 612 (1937); *Douglas v. Willcuts*, 296 U.S. 1, 9, 56 S.Ct. 59, 62, 80 L.Ed. 3 (1935); *Irwin v. Gavit*, 268 U.S. 161, 166, 45 S.Ct. 475, 475–76, 69 L.Ed. 897 (1925); *Park & Tilford Distillers Corp. v. United States*, 107 F.Supp. 941, 123 Ct.Cl. 509, 514 (1952), *cert. denied*, 345 U.S. 917, 73 S.Ct. 728, 97 L.Ed. 1350 (1953); *Mobley v. United States*, 8 Cl.Ct. 767, 771 (1985).

In construing the scope of gross income, the Supreme Court has held a wide range of economic benefits to be taxable. *See, e.g., James v. United States*, 366 U.S. 213, 219, 81 S.Ct. 1052, 1055, 6 L.Ed.2d 246 (1961) (embezzled funds are taxable); *Commissioner v. Duberstein*, 363 U.S. 278, 291–92, 80 S.Ct. 1190, 1200, 4 L.Ed.2d 1218 (1960) (value of car received from company in appreciation for referrals is income); *Rutkin v. United States*, 343 U.S. 130, 137, 72 S.Ct. 571, 575, 96 L.Ed. 833 (1952) (extortion proceeds are income); *Commissioner v. Smith*, 324 U.S. 177, 182, 65 S.Ct. 591, 593, 89 L.Ed. 830 (1945) (income recognized when employee effectively exercised stock option conferred by employer for services rendered); *Old Colony Trust Co. v. Commissioner*, 279 U.S. 716, 729, 49 S.Ct. 499, 504, 73 L.Ed. 918 (1929) (discharge of employee's obligation to pay income taxes in consideration of services rendered to corporation constitutes taxable income to employee). In so doing the Court has sought to give effect to the congressional intent to "tax all gains except those specifically exempted." *Glenshaw Glass*, 348 U.S. at 429–430, 75 S.Ct. at 476 (citing *Commissioner v. Jacobson*, 336 U.S. 28, 49, 69 S.Ct. 358, 369, 93 L.Ed. 477 (1949); *Helvering v. Stockholms Enskilda Bank*, 293 U.S. 84, 87–91, 55 S.Ct. 50, 51–53, 79 L.Ed. 211 (1934)); *see also Commissioner v. Lo Bue*, 351 U.S. 243, 246, 76 S.Ct. 800, 802, 100 L.Ed. 1142 (1956). Generally, then, all realized accessions to wealth over which the taxpayer exercises complete dominion are presumed to be taxable. *See Glenshaw Glass*, 348 U.S. at 431, 75 S.Ct. at 477; *Roemer v. Commissioner of Internal Revenue*, 716 F.2d 693, 696 (9th Cir.1983).

Embodied in this congressional policy is the recognition that the taxing power is vital to the very existence of government. Accordingly, the Supreme Court has consistently adhered to the associated corollary that all exemptions should be construed with restraint. *Commissioner v.*

---

$131.83. Ultimately, the IRS abated the penalty in full and refunded $51.25 of the interest paid.

**4.** 26 U.S.C. § 61 (1982). Although most case law predates the present applicable Code, congressional revisions of the tax code have not narrowed the scope of "gross income." *Glenshaw Glass*, 348 U.S. 426, 432, 75 S.Ct. 473, 477, 99 L.Ed. 483 (1955).

*Jacobson,* 336 U.S. at 49, 69 S.Ct. at 369; *Somerville v. United States,* 13 Cl.Ct. 287, 293 (1987). Exemptions from taxation in turn are a matter of legislative grace. To escape liability the taxpayer bears the burden of demonstrating that he has been exempted from the tax. *Roemer,* 716 F.2d at 696. To accomplish this the taxpayer must establish by persuasive evidence that he is expressly or impliedly in an excepted class. *Frederick Smith Enterprise Co. v. Commissioner,* 167 F.2d 356 (6th Cir.1948). Exemption may not rest upon implication. *United States v. Wells Fargo Bank,* 485 U.S. 351, 108 S.Ct. 1179, 1182, 99 L.Ed.2d 368 (1988); *United States Trust Co. v. Helvering,* 307 U.S. 57, 60, 59 S.Ct. 692, 693, 83 L.Ed. 1104 (1939).

More specifically, Treasury Regulation § 1.61–2 provides that termination or severance pay falls within the scope of gross income unless such payments have been otherwise excluded by law. Treas.Reg. § 1.61–2; *see also Beggy v. Commissioner,* 23 T.C. 736 (1955), *aff'd per curiam,* 226 F.2d 584 (3rd Cir.1955).[5]

*Application to § 797d(b)*

In the case at bar there is no question that by virtue of the termination payments Mr. Slattery realized an "accession to wealth." To counter the presumption that such payments should be considered income, plaintiff must point to an unambiguous exemption. In this case, the taxpayer contends that NERSA so provides in § 797d(b) when it characterizes a Title VII payment as "compensation solely for the purposes of" the Railroad Retirement Act and the Railroad Unemployment Insurance Act. Plaintiff relies specifically on the decision of the district court in *Sutherland v. United States,* 664 F.Supp. 207 (W.D.Pa. 1987), which held that § 797d(b) did indeed create the necessary exemption from gross income.

Defendant relies on two other decisions, both decided after *Sutherland,* that have examined the same issue presented here and have reached a result contrary to that of the district court. *Herbert,* 850 F.2d 32; *Martin,* 90 T.C. 1078. Without repeating all the relevant analysis from those two decisions, the court is persuaded that they correctly hold that the Title VII payments at issue should be considered gross income. The directive that the payments be considered compensation "solely" for the enumerated purposes does not provide the necessary exemption.

First, the characterization of the payment as compensation is not dispositive. Compensation is but one of many forms of taxable income. *See* cases cited, *supra* p. 4. While use of the term "compensation" may suggest tax consequences, the inability to so classify a clear economic benefit does not remove that benefit from the greater scope of the term "gross income" in a tax context. *See* 26 U.S.C. § 61(a) ("General Definition—Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (*but not limited to*) the following items; (1) Compensation" (emphasis added)); *see also Herbert,* 850 F.2d at 35.

Second, a reasonable interpretation of the relevant language that does not result in an exemption from gross income has been provided by the court in *Martin.* The Tax Court articulated a persuasive legislative rationale for why the payment would be considered "compensation" solely for the two enumerated purposes. Defining the payment as compensation provided a means both for determining retirement benefits under the Railroad Retirement Act of 1974, 45 U.S.C. §§ 231–231u (1982), and for calculating the amount of monies due under the Railroad Unemployment Insurance Act, 45 U.S.C. §§ 351–368 (1982), and

---

**5.** The IRS has issued a revenue ruling on point, in which it is determined that a lump-sum payment received by a railroad employee in consideration of his relinquishment of employment rights acquired by reason of his prior service constitutes ordinary income. Rev.Rul. 75–44, 1975–1 Cum.Bull. 15. This 1975 ruling mod-

ified a previous ruling that held termination payments were gross income to the recipient but not compensation for services rendered for the purpose of the Railroad Retirement Act and other laws. Rev.Rul. 59–227, 1959–2 Cum.Bull. 13.

the eligibility date for such payments. *Martin*, 90 T.C. at 1082–83. Prohibiting classification of the payment as compensation for other Title 45 purposes dispensed, *inter alia*, with the requirement that the employer contribute to the unemployment compensation fund for the termination payments under 45 U.S.C. § 358(a). *Id.*

Third, Congress failed to expressly exempt the payments from taxation. In other instances when Congress desired to exclude some benefit from the operation of the tax laws it included appropriate language. *See, e.g.*, 45 U.S.C. § 352(e) (1982) (railroad unemployment benefits shall not be "subject to any tax ... under any circumstances"). Where Congress desired to confer partial tax relief, it has explicitly so provided. For example, § 231m of Title 45 provides that railroad retirement annuities shall not be subject to tax except that the amount of any "supplemental annuity paid to an individual under section 231a(b) of this title ... [shall not be excluded] from income taxable pursuant to the Federal income tax provisions of the Internal Revenue Code of 1954." 45 U.S.C. § 231m(b)(1) (1982 & Supp. I 1983).

Had Congress intended the payments to be tax-exempt, it had two avenues available. It could have included an express exemption within § 797d(b), or it could have amended the Internal Revenue Code to incorporate the Title VII benefits among the cross-referenced exemptions within section 135 (or adopted a separate provision to the same effect).[6] Congress failed to do either. In fact, a survey of the legislative history of § 797d(b) and its consideration in the cases addressing the issue at bar reveals no express language describing the intent of Congress with respect to income tax consequences of the payment. *See Herbert*, 850 F.2d at 35; *Martin*, 90 T.C. at 1084; *cf. Sutherland*, 664 F.Supp. at 212 (stating that the court did "not read § 797d(b) and its accompanying legislative intent as requiring the payments to be treated" as gross income, but offering no specific citation).

The district court in *Herbert*, which was reversed by the Second Circuit, also examined the relevant legislative history. *Herbert v. United States*, 662 F.Supp. 573, 579–82 (S.D.N.Y.1987), *rev'd*, 850 F.2d 32 (2d Cir.1988). It noted the lack of any express language regarding the issue, *id.* at 579 ("the legislative history ... of Title VII discloses no express reference by Congress to exemption of the payments"), and found that the general purposes of the alternative employee protection system created by Title VII "were two-fold: to have the Federal Government, i.e., the federal taxpayer, fund the system at less cost; while at the same time continuing to protect the former Conrail employee." *Id.* It concluded that exemption of the payment was consistent with the latter purpose and thus, based on a "broader reading of the spirit and purposes of Title VII," exclusion of the payment from gross income was supported by the legislative history. *See id.* This court disagrees. Failure to tax these payments would "benefit" the employee only in the sense that any taxpayer would benefit from being exempted. It is also true that the first and perhaps more significant goal of the legislation—to reduce the cost of employee protection and benefit provisions—would be equally advanced by taxing the benefits. 45 U.S.C. § 1101(4)–(5) (entitled "[c]ongressional findings and declarations" this section states that the benefits conferred by Title V "imposed an excessive burden on the Federal taxpayer, and [were] an obstacle to the establishment of improved rail service and continued rail employment").

In sum, the language of the statute is barren of any explicit reference to the tax consequences of Title VII benefits and the legislative history does not address the issue. Congressional silence is not an adequate basis for finding an exemption. *See Wells Fargo*, 108 S.Ct. at 1182–84 (holding the legislative history of the statute at issue was not sufficient to overcome the well settled rule that exemptions from taxation are not to be implied). It is therefore

---

**6.** 26 U.S.C. § 135. This section lists several items exempted from income tax pursuant to provisions outside the Internal Revenue Code and cross references those statutes.

reasonable to assume that the phrase characterizing the payments as compensation is limited to the enumerated § 797 purposes. Even assuming *arguendo* that the phrase has application beyond Title 45, characterization of an economic gain as not compensation does not preclude the payment from falling within the ambit of 26 U.S.C. § 61. Absent any clearly articulated intention to confer tax-exempt status on the termination allowances, the court may not infer one.

## CONCLUSION

Defendant's Motion for Summary Judgment is granted. The clerk is directed to dismiss the complaint. No costs.